[Civ. No. 61785. Second Dist., Div. Two. Dec. 9, 1981.]

GINA BIGGS, Plaintiff and Appellant, v.
CALIFORNIA INSURANCE GUARANTEE ASSOCIATION,
Defendant and Respondent.

**COUNSEL**

Karl Seuthe and Eric Bryan Seuthe for Plaintiff and Appellant.

Kinkle, Rodiger & Spriggs, John V. Hager and Clayton C. Averbuck for Defendant and Respondent.

## OPINION

**COMPTON, J.**—Plaintiff Gina Biggs initiated an action for declaratory relief and money damages seeking to recover from the California Insurance Guarantee Association (CIGA) the amount of a judgment she had previously obtained in a personal injury action against the Follies Theatre, Inc., a corporation (Follies). She appeals from a judgment in favor of CIGA. We affirm.

On April 7, 1973, Biggs, a dancer at the Follies, slipped and fell on the sidewalk in front of her place of employment. In an action entitled Biggs v. City of Los Angeles[1] et al., Los Angeles Superior Court No. C 76049, she obtained a default judgment in the sum of $159,210.09. The default nature of the judgment and the circumstances under which it was obtained are the critical issues involved in these proceedings.

On May 3, 1976, prior to trial of the personal injury action, the Follies' corporate powers were suspended for failure to pay corporate franchise taxes under Revenue and Taxation Code sections 23301, 23301.5 and 23302. This suspended the Follies' capacity to defend itself in the action. As a consequence, plaintiff successfully moved to strike the previously filed answer and obtained judgment by default.

Prior to and at the time of the injury to plaintiff, Follies had general liability insurance coverage in the amount of $100,000. That coverage was provided by Westgate-California Insurance Company (Westgate).

On February 28, 1975, Westgate was declared insolvent and a liquidator was appointed pursuant to Insurance Code sections 1011 and 1016.[2] Counsel for the plaintiff advised the liquidator of her claim against the Follies. The liquidator in turn instructed her to submit her claim to CIGA.

---

[1]The City of Los Angeles and other parties were named defendants but the judgment in question was against the Follies.

[2]Insurance Code section 1011 provides in pertinent part: "The superior court of the county in which is located the principal office of such person in this state shall, upon the filing by the commissioner of the verified application showing any of the following conditions hereinafter enumerated to exist, issue its order vesting title to all of the assets of such person, wheresoever situated, in the commissioner or his successor in office,

CIGA is an association created by statute (Ins. Code, § 1063) to which insurance carriers are required to belong as a condition of doing business in California. Its organization and administration is statutorily described as are its powers and duties. Its primary objective is to provide insurance against "loss arising from the failure of an insolvent insurer to discharge its obligations under its insurance policies." (Ins. Code, § 119.5.)

Plaintiff Biggs, on April 21, 1975, notified CIGA of her claim against the Follies and of the fact that litigation was pending. CIGA undertook the defense of the Follies pursuant to its authority under Insurance Code section 1063.2, subdivision (b), which provides in part: "(b) The association shall be a party in interest in all proceedings involving a covered claim, and shall have the same rights as the insolvent insurer would have had if not in liquidation, including but not limited to the right to: (1) to appear, defend, and appeal a claim in a court of competent jurisdiction; ..."

In September of 1977, plaintiff's counsel notified CIGA of his intent to move to strike the answer and to take a default judgment against the Follies. On October 28, 1977, after rejecting CIGA's request to appear amicus curiae on behalf of the Follies, the trial court struck the answer and entered the default judgment.

When CIGA refused to pay the judgment, plaintiff instituted the present action in which, as noted, judgment was entered in favor of CIGA.

■ CIGA's refusal to pay and the trial court's judgment in this action supporting that refusal were based on the specific provisions of

in his official capacity as such, and direct the commissioner forthwith to take possession of all of its books, records, property, real and personal, and assets, and to conduct, as conservator, the business of said person, or so much thereof as to the commissioner may seem appropriate, and enjoining said person and its officers, directors, agents, servants, and employees from the transaction of its business or disposition of its property until the further order of said court: ... (d) That such person is found, after an examination, to be in such condition that its further transaction of business will be hazardous to its policyholders, or creditors, or to the public."

Insurance Code section 1016 provides: "If at any time after the issuance of an order under section 1011, or if at the time of instituting any proceeding under this article, it shall appear to the commissioner that it would be futile to proceed as conservator with the conduct of the business of such person, he may apply to the court for an order to liquidate and wind up the business of said person. Upon a full hearing of such application, the court may make an order directing the winding up and liquidation of the business of such person by the commissioner, as liquidator, for the purpose of carrying out the order to liquidate and wind up the business of such person."

Insurance Code section 1063.2, subdivision (g), which in describing claims against the insolvent insurer for which CIGA shall continue coverage, states "nor shall any default judgment against the insolvent insurer, or against the insured of the insolvent insurer, be binding against the association."

The clear purpose of the statutory language is to protect CIGA against collusion and to require simply that the validity of any claim be determined in an adversary setting before being reduced to a judgment which CIGA must honor.

In the usual situation a plaintiff in a personal injury action has no direct cause of action against the defendant's liability insurer. Insurance Code section 11580, however, requires that contracts of insurance contain a provision that an action may be brought directly against the insurer on a *judgment* obtained against the insured for death, bodily injury or property damage. The purpose of such a provision is to protect injured parties against the insolvency of the *insured.*

The role of CIGA differs from that of the ordinary insurer. It was created to provide relief in the case of an *insurance carrier* becoming insolvent (*Interstate Fire & Casualty Ins. Co.* v. *California Ins. Guarantee Assn.* (1981) 125 Cal.App.3d 904 [178 Cal.Rptr. 673] and in so doing is given certain powers and certain protections. CIGA, however, does not "stand in the shoes" of the insolvent insurer for all purposes.

Neither Insurance Code section 11580 nor the contract of insurance between Follies and Westgate created any liability on the part of CIGA or provided plaintiff with a direct cause of action against CIGA on the judgment.

Insurance Code section 1063, subdivision (g) provides: "The association, either in its own name or through servicing facilities, may be sued and may use the courts to assert or defend any rights the association may have by virtue of this article as reasonably necessary to fully effectuate the provisions thereof." The provision that CIGA may be sued, however, is specifically limited by the provision of Insurance Code section 1063.2, subdivision (g) that no default judgment against an insolvent insurer or one of its insureds shall be binding on CIGA.

CIGA, in undertaking the defense of the Follies as authorized by Insurance Code section 1063, subdivision (g) and as called for in the

contract between Follies and Westgate, did not become nor was it required to appear as a party against whom a judgment could be entered.

All that CIGA has sought throughout both proceedings was the right to appear in the personal injury case in the only way it could and that was to provide a defense to Follies on the merits of plaintiff's claim.

In the personal injury action, CIGA was prevented from asserting its right to appear and defend by the plaintiff's action in moving to strike the answer and raising the issue of the Follies lack of capacity.

Plaintiff's argument is that CIGA had notice of the proposed default and thus could have taken steps to revive the corporation.

There were thus two alternative means by which the present dilemma could have been avoided. The resolution of this appeal turns on which course of action was the appropriate one.

Plaintiff could have waived the incapacity of the Follies by not raising the issue and permitting CIGA to defend the Follies against her personal injury claims. (*Traub Co.* v. *Coffee Break Service, Inc.* (1967) 66 Cal.2d 368 [57 Cal.Rptr. 846, 425 P.2d 790].) If she had obtained a judgment under those circumstances, CIGA would be obligated to honor it to the limits of Westgate's policy. If judgment had been for the Follies, the issue would be moot.[3]

Alternatively, assuming that the only obstacle to reviving the corporation was payment of the taxes due, CIGA could have revived the corporation in advance of the trial. That action would have required investment of a substantial sum of money, a sum which could not later be recovered regardless of the outcome of the trial, simply to gain the right to defend in the action. Nothing in the statutes authorizes or requires CIGA to make such an expenditure.

As in all cases we consider that plaintiff had the burden of pursuing her claim and making her case. CIGA, as a potential and later actual defendant, was under no duty to take any affirmative action.

On the other hand, plaintiff was well informed of the fact that if she recovered a judgment against the Follies, she would have to look to

---

[3]If necessary, CIGA could have revived the corporation at that time in order to validate the judgment in its favor. (*Peacock Hill Assn.* v. *Peacock Lagoon Constr. Co.* (1972) 8 Cal.3d 369 [105 Cal.Rptr. 29, 503 P.2d 285].)

CIGA for satisfaction. She knew that the Follies was defunct and lacking in any assets and that Westgate itself was insolvent.

Faced with the statutory prohibition against enforcing a default judgment against CIGA, plaintiff nonetheless insisted on asserting the incapacity of Follies in obtaining the default judgment. Plaintiff appears to want "to have her cake and eat it too."

We conclude that plaintiff having, as she did, the burden of pressing her claim, should have waived the incapacity issue and permitted CIGA to defend. CIGA was under no obligation to advance money in order to "purchase" its right to defend the action.

Revenue and Taxation Code section 23301, which provides for suspension of corporate powers for failure to pay taxes, is designed to pressure corporations to pay their taxes. That purpose would not be served by penalizing an innocent person or entity such as CIGA under these circumstances.

Finally we must dispel the notion advanced by plaintiff that our conclusion will permit CIGA in the future to simply *refuse to defend* any insurer and thus force all claimants to obtain summary judgments which are not binding on CIGA.

We are not here confronted with the situation in which CIGA, having the opportunity to do so, simply refused to defend the insured of an insolvent insurer. Were that the case we would have no trouble in holding that such refusal would estop CIGA from later refusing to pay on the grounds that the judgment was taken by default.

Here plaintiff seeks to impose on CIGA the extraordinary duty of reviving the corporation in order to gain the right to defend. This is a far cry from a simple refusal to defend.

The judgment is affirmed.

Roth, P. J., and Beach, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 3, 1982.