[No. B006061. Second Dist., Div. Four. Feb. 22, 1985.]

CENTRAL NATIONAL INSURANCE COMPANY OF OMAHA,
Cross-complainant and Appellant, v.
CALIFORNIA INSURANCE GUARANTEE ASSOCIATION,
Cross-defendant and Respondent.

454

**COUNSEL**

Karma, Coleite & Bence, Arthur Karma, Stanley R. Coleite and Randall M. Nunn for Cross-complainant and Appellant.

Clausen, Harris & Campbell, Lon Harris and Stanley T. Gilliam for Cross-defendant and Respondent.

**OPINION**

**SHUMSKY, J.**[*]—Appellant and cross-complainant, The Central National Insurance Company of Omaha (Central National) appeals the sustaining of

---

[*]Assigned by the Chairperson of the Judicial Council.

a demurrer without leave to amend pursuant to California Code of Civil Procedure section 430.10, subdivision (e)[1] in favor of respondent and cross-defendant, California Insurance Guarantee Association (CIGA). A partial dismissal was then granted. We affirm.

Appellant, together with Signal Insurance Company (Signal) and various other insurers, issued certain insurance policies naming Leonard M. Ross and Rossco Inc.[2] as insured parties. Subsequently, more than 23 lawsuits, some still pending, were filed by various parties against Ross.

Appellant entered into a settlement agreement as to some of the lawsuits (*Goodrich* v. *Marlin* actions) for $1.5 million. Signal had become insolvent and appellant requested CIGA to contribute the excess over the aggregate policy limit to the settlement pool. CIGA refused and appellant paid the agreed upon $1.5 million. Central National also assumed the defense in another group of Ross actions (*Willow Ridge* actions). American Home Assurance Company, who had provided the defense in a different group of actions, filed a complaint requesting declaratory relief, and named both Central National and Ross, among others, as defendants. Central National filed a cross-complaint for declaratory relief, naming CIGA as a cross-defendant, to which CIGA demurred.

Central National appeals, raising the following issues:

I. Whether or not Central National, an insurer, can have a "covered claim."

II. Should CIGA be estopped from asserting that Central National has no standing to bring an action for declaratory relief?

III. Whether the trial court abused its discretion by refusing Central National leave to amend its pleading to formally allege estoppel.

---

[1]California Code of Civil Procedure section 430.10, subdivision (e), states in pertinent part: "The party against whom a complaint or cross-complaint has been filed may object by demurrer . . . (e) The pleading does not state facts sufficient to constitute a cause of action."

[2]Hereinafter referred to collectively as Ross.

■ In order to determine whether or not an insurer can have a "covered claim,"[3] it is necessary to look to the legislative intent of the statute. ■ CIGA was enacted in 1969 as a compulsory association requiring most state-regulated insurance companies to be members. (§§ 1063-1063.14; 1063, subd. (a).)[4]

"Its purpose is to provide insurance against loss arising from the failure of an insolvent insurer to discharge its obligations under its insurance policies." (*Middleton* v. *Imperial Ins. Co.* (1983) 34 Cal.3d 134, 137 [193 Cal.Rptr. 144, 666 P.2d 1]; *California Union Ins. Co.* v. *Central National Ins. Co.* (1981) 117 Cal.App.3d 729, 734 [173 Cal.Rptr. 35].)

■ The legislative intent was to create a protection for the public against insolvent insurers when no secondary insurer is available.

"[W]hen a secondary insurer is available in the event of an insolvent primary insurer, the secondary insurer should be responsible in the absence of specific language to the contrary. [§ 1063.1, subd. (c)(7)(a).] The secondary insurer has received a premium for the risk and thus the secondary insurer and not CIGA, should be responsible for the coverage of the loss." (*Ross* v. *Canadian Indemnity Ins. Co.* (1983) 142 Cal.App.3d 396, 404 [191 Cal.Rptr. 99].)

"The Legislature chose to provide a limited form of protection for the public, not a fund for the protection of other insurance companies from the insolvencies of fellow members." (*California Union Ins. Co.* v. *Central National Ins. Co., supra,* 117 Cal.App.3d at p. 734.)

---

[3] "'Covered claims' means the obligations of an insolvent insurer, including the obligation for unearned premiums, (i) imposed by law and arising out of an insurance policy of the insolvent insurer; (ii) which were unpaid by the insolvent insurer; (iii) which are presented as a claim to the liquidator in this state or to the association on or before the last date fixed for the filing of claims in the domiciliary liquidating proceedings; (iv) which were incurred prior to, on, or within 30 days after the date the liquidator was appointed; (v) for which the assets of the insolvent insurer are insufficient to discharge in full; . . ." (Ins. Code, § 1063.1, subd. (c)(1).)
 "'Covered claims' shall not include any obligations to insurers, insurance pools, or underwriting associations, except as otherwise provided in this chapter." (§ 1063.1, subd. (c)(4).)
 "'Covered claims' shall not include (a) any claim to the extent it is covered by any other insurance of a class covered by the provisions of this article available to the claimant or insured nor (b) any claim by any person other than the original claimant under the insurance policy in his or her own name, his or her executor, administrator, guardian or other personal representative or trustee in bankruptcy and shall not include any claim asserted by an assignee or one claiming by right of subrogation, except as otherwise provided in this chapter." (§ 1063.1, subd. (c)(7).)
 [4] All code references, unless otherwise noted, will be to the California Insurance Code.

CIGA is only authorized to pay the "covered claims" of an insolvent insurer. The statute excludes from "covered claims" any obligations to insurers or any claim asserted by an assignee or one claiming by right of subrogation. (§ 1063.1, subd. (c)(4), and § 1063.1, subd. (c)(7)(b).) Applying both the case law and the plain meaning of the statutory language, Central National, a solvent insurance carrier, falls clearly in the excluded class and cannot directly nor indirectly through assignment or subrogation be found to be one with a covered claim payable by CIGA.

We next examine whether CIGA should be estopped from applying section 1063.1, subdivision (c)(4), and section 1063.1, subdivision (c)(7)(a) and (b).

Central National sets forth two bases for application of equitable estoppel. Central National first contends CIGA's refusal to contribute to the settlement pool in the *Goodrich* actions was a failure to perform a statutory duty. Because CIGA did not assume the rights and obligations of Signal at the time of Signal's insolvency, Central National contends it was forced to pay 1.5 million dollars to settle the claims. Secondly, Central National argues that CIGA had a statutory obligation to assume the defense in the *Willow Ridge* actions and CIGA's failure to do so caused Central National to tender the defense. By applying the principle of estoppel, Central National would thereby have a "covered claim" against CIGA. Central National relies primarily on *Middleton* v. *Imperial Insurance Co., supra,* 34 Cal.3d at page 137 and *Biggs* v. *Cal. Ins. Guarantee Association* (1981) 126 Cal.App.3d 641 [179 Cal.Rptr. 16], for this proposition.

"Whenever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it." (*City of Long Beach* v. *Mansell* (1970) 3 Cal.3d 462, 488-489 [91 Cal.Rptr. 23, 476 P.2d 423].)

For equitable estoppel to lie, five elements must be established. They are: "(1) [A] representation or concealment of material facts (2) made with knowledge, actual or virtual, of the facts (3) to a party ignorant, actually and permissibly, of the truth (4) with the intention, actual or virtual, that the latter act upon it; and (5) the party must have been induced to act upon it. [Citations.]" (7 Witkin, Summary of Cal. Law (8th ed. 1974) Equity, § 132, pp. 5351-5352, italics omitted.)

There can be no estoppel where one of these elements is missing. (*Johnson* v. *Johnson* (1960) 179 Cal.App.2d 326, 330 [3 Cal.Rptr.

575].) In applying the argument of Central National to the essential elements necessary to establish estoppel, we find the very first element is missing. CIGA made no representation or concealment of material facts. The allegation of the cross-complaint which is taken as true for the purpose of demurrer is that CIGA refused to acknowledge any statutory duty regarding the *Goodrich* or *Willow Ridge* actions. This is proper inasmuch as Central National at all times qualified as "other insurance" as set forth in section 1063.1, subdivision (c)(7)(a) and could not step into the shoes of the insured by application of section 1063.1, subdivision (c)(4) and (c)(7)(b).

Our conclusion is not swayed by reviewing both *Middleton, supra,* and *Biggs, supra,* for it should be noted that in both cases there was no solvent carrier factually involved and the claims were brought by the insured. Further, in *Middleton, supra,* a statutory technical procedural duty of the liquidator owed to the insured was not satisfied and estoppel was applied. In *Biggs,* the decision was not based upon an estoppel theory.

Here, other insurance was available in the form of Central National and the defense of Ross had been undertaken. CIGA was prohibited by statute from either contributing to the settlement pool or tendering a defense. Thus, estoppel will not lie and CIGA could apply section 1063.1, subdivision (c)(4) and section 1063.1, subdivision (c)(7)(a) and (b).

As to the last contention, whether the trial court abused its discretion by refusing Central National leave to amend its pleading to formally allege estoppel, we think not. Central National argues that estoppel is a factual issue for the trier of fact to decide, and that it should have its day in court.

A general demurrer should not be sustained if the pleading, liberally construed, states a cause of action on any theory.

Whether there is an estoppel is chiefly a question of fact, and normally it must be pleaded, either as a part of the cause of action or as a defense. (*General Motors Accept. Corp.* v. *Gandy* (1927) 200 Cal. 284, 295 [253 P. 137].)

 "Leave to amend should be denied where the facts are not in dispute, and the nature of the plaintiff's claim is clear, but, under the substantive law, no liability exists. Obviously, no amendment would change the result. (*Routh* v. *Quinn* (1942) 20 Cal.2d 488, 493.)" (3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 847, p. 2451.)

■ Here, it is undisputed that Central National is a solvent insurer who has received compensation for potential risks from Ross and that CIGA receives no compensation and discharges its obligations through member assessment. (§ 1063.5.) The further fact that the purpose of CIGA is to protect a segment of the insured public against insolvent insurers, is not in issue. It is also a fact that CIGA refused involvement in *Goodrich* and *Willow Ridge* actions. Under the substantive law, solvent carriers will not be reimbursed directly as insurers nor indirectly under the theories of assignment or subrogation. For estoppel to apply, there must be representation or concealment of material fact.

It is clear appellant would not be able to state facts sufficient to support a cause of action under the most liberal construction.

We, therefore, hold that the demurrer was properly sustained without leave to amend.

The judgment is affirmed.

Kingsley, Acting P. J. and Arguelles, J., concurred.