[No. B009999. Second Dist., Div. One. Mar. 27, 1986.]

BRIAN G. SAYLIN, Plaintiff and Appellant, v.
CALIFORNIA INSURANCE GUARANTEE ASSOCIATION,
Defendant and Respondent.

**COUNSEL**

Perona, Langer, LaTorraca & Beck and James T. Perona for Plaintiff and Appellant.

Clausen, Harris & Campbell, Marie D. Clause and Gregory P. Orland for Defendant and Respondent.

**OPINION**

**SPENCER, P. J.—**

### INTRODUCTION

Plaintiff Brian G. Saylin appeals from a summary judgment granted[1] to defendant California Insurance Guarantee Association (CIGA), and from a prior order granting CIGA's motion to strike allegations by which plaintiff sought to recover damages for his emotional distress.

### STATEMENT OF FACTS

Plaintiff is an attorney. From September 17, 1971, to September 17, 1972, he was insured by Signal Insurance Company's (Signal) lawyers' professional liability insurance policy No. LP-093154. The policy provides coverage "[t]o pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages resulting from any claim made against the insured arising out of the performance of professional services for others in the insured's capacity as a lawyer . . . and caused by any act, error or omission of the insured" during the policy period. There is no "prior acts" endorsement; hence, "[a]cts committed prior to the beginning of the policy period" are excluded expressly from coverage. Signal undertakes to "defend in his name and behalf any suit against the insured alleging such act, error or omission and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company shall have the right to make such investigation and negotiation of any claim or suit as may be deemed expedient by the company."

---

[1]At the same time, the trial court denied plaintiff's motion for summary judgment. The document from which plaintiff appeals is entitled "order adjudicating issue"; however, its effect is indistinguishable from that of a summary judgment.

On August 12, 1974, Catherine Simmonds (Simmonds) filed suit against plaintiff, among others, alleging plaintiff's professional misconduct "between the dates of July 4, 1968 and September 26, 1971." Plaintiff tendered the complaint to Signal, and Signal responded by letter dated June 23, 1975. The letter references the "Date of Loss" as "September 1971." After noting specific exclusions which appear from the complaint to be applicable to the indemnification of any liability on plaintiff's part, Signal agrees to provide plaintiff with a defense. The letter cautions, however, that "acceptance of this defense is with a Reservation of Rights by Signal . . . as to all policy defenses." In conclusion, Signal refers plaintiff to the law firm of Parker, Stanbury, McGee & Babcock for provision of his defense.

Parker, Stanbury, McGee & Babcock undertook plaintiff's defense, continuing his representation for approximately two and one-half years. During the course of the Simmonds litigation, the depositions of plaintiff and Simmonds were taken. Simmonds testified that she never spoke with plaintiff regarding the legal problem which gave rise to the litigation after August 1970. Plaintiff testified he did no work for Simmonds, either on the file which prompted the litigation or otherwise, after March 1971.

Signal became insolvent in January 1978, after which the processing of Signal's unfinished business became CIGA's responsibility in part. CIGA undertook the investigation of Signal's pending claims, employing Neil H. Buckley, formerly a claims supervisor for Signal, in the process. On February 6, 1978, 28 days after Signal became insolvent, CIGA advised the law firm representing plaintiff that it would withdraw from his defense effective February 10. In the interim, the law firm was authorized to attempt to settle the matter for the nominal sum of $1,000.

Upon learning of CIGA's intent, plaintiff informed his attorneys he would not pay any future costs of their continued representation. Thereafter, the law firm withdrew from plaintiff's defense on February 28, 1978. Trial of the Simmonds matter was set for March 1, 1978, but the matter was continued due to an infirmity in the appearance of one of the other defendants. Ultimately, plaintiff obtained a judgment of nonsuit in the Simmonds litigation. The instant action followed, with plaintiff alleging CIGA breached its duty to provide a continuing defense.

CONTENTS

I

Plaintiff contends the trial court erred in granting CIGA summary judgment and denying his motion for summary judgment, in that CIGA "stands

in the shoes" of Signal, thereby assuming the identical duty to defend plaintiff, as determined at the outset of the litigation against him, as a matter of law—a duty it indisputably breached.

## II

Plaintiff further contends the trial court erred in granting CIGA's motion to strike allegations by which he sought to recover damages for his emotional distress.

DISCUSSION

## I

Plaintiff contends the trial court erred in granting CIGA summary judgment and denying his motion for summary judgment, in that CIGA "stands in the shoes" of Signal, thereby assuming the identical duty to defend plaintiff, as determined at the outset of the litigation against him, as a matter of law—a duty it indisputably breached. We disagree.

■ Code of Civil Procedure section 437c provides that a motion for summary judgment "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Subd. (c).) The court resolves the question by examining supporting or opposing "affidavits, declarations, admissions, answers to interrogatories, depositions and matters of which judicial notice . . . may be taken." (Code Civ. Proc., § 437c, subd. (b).) "The court must consider presumptions and draw inferences from the facts adduced where the inference is the only reasonable one that may be drawn." (*Hooks* v. *Southern Cal. Permanente Medical Group* (1980) 107 Cal.App.3d 435, 441 [165 Cal.Rptr. 741]; *Hirsch* v. *Blish* (1977) 76 Cal.App.3d 163, 166 [142 Cal.Rptr. 646].) However, the court has no power in a summary proceeding to weigh one inference against another or against other evidence. (*Brown* v. *City of Fremont* (1977) 75 Cal.App.3d 141, 145 [142 Cal.Rptr. 46].)

In the instant matter, the relevant facts are undisputed and not subject to conflicting reasonable inferences. In large part, the matter turns on documentary evidence which similarly is not susceptible of more than one reasonable interpretation.

■ Defendant CIGA "is an involuntary, unincorporated association of insurers admitted to transact business in California. Each liability insurer,

as a condition of its authority to transact insurance in this state, is required to participate in the association. (Ins. Code, § 1063.) . . . The statutory duty of CIGA is to provide for each member insolvency insurance to pay some (but not all) claims arising out of an insurance policy of an insolvent insurer. (§§ 119.5, 1063 et seq.)" (*Interstate Fire & Casualty Ins. Co.* v. *California Ins. Guarantee Assn.* (1981) 125 Cal.App.3d 904, 908 [178 Cal.Rptr. 673].)

■ CIGA is authorized only to "pay and discharge covered claims." (Ins. Code, § 1063.2, subd. (a).) It is only *"in connection therewith"* that CIGA is to "pay for or furnish loss adjustment services and defenses of claimants *when required* by policy provisions. . . ." (*Ibid.,* italics added.) In addition, CIGA "shall be a party in interest in all proceedings *involving a covered claim,* and shall have the same rights as the insolvent insurer would have had if not in liquidation . . . ." (Ins. Code, § 1063.2, subd. (b), italics added.) It is unequivocally clear the scope of CIGA's rights and duties turns on the definition of "covered claim."

■ Subdivision (c)(1) of Insurance Code section 1063.1 defines "covered claims" as "the obligations of an insolvent insurer, (i) imposed by law and arising out of an insurance policy of the insolvent insurer; (ii) which were unpaid by the insolvent insurer; (iii) which are presented as a claim to the . . . association . . . . (v) for which the assets of the insolvent insurer are insufficient to discharge in full . . . ." The remainder of subdivision (c) enumerates nine separate categories of claims clearly "arising out of an insurance policy of the insolvent insurer" which nevertheless are not "covered claims." Since "covered claims" are not coextensive with an insolvent insurer's obligations under its policies, CIGA cannot and does not "'stand in the shoes' of the insolvent insurer for all purposes." (*Biggs* v. *California Ins. Guarantee Assn.* (1981) 126 Cal.App.3d 641, 645 [179 Cal.Rptr. 16].) Indeed, CIGA is "expressly forbidden" to do so except where the claim at issue is a "covered claim." (*E. L. White, Inc.* v. *City of Huntington Beach* (1982) 138 Cal.App.3d 366, 370-371 [187 Cal.Rptr. 879].) It necessarily follows that CIGA's first duty is to determine whether a claim placed before it is a "covered claim."

Plaintiff argues the duty to defend necessarily relates back to the duty existing under the policy issued by the insolvent insurer, Signal, and since it is clear Signal could not have withdrawn a defense from plaintiff under the circumstances presented, CIGA therefore was bound also to continue the defense. It is unnecessary to determine whether plaintiff's second premise is valid, for his primary premise is not. As noted *ante,* CIGA's duty to

defend is limited to "covered claims"; hence, it does not necessarily relate back to the duty owed by the insolvent insurer under its policy.

■ For an insurer, the existence of a duty to defend turns not upon the ultimate adjudication of coverage under its policy of insurance, but upon those facts known by the insurer at the inception of a third party lawsuit. (*State Farm Mut. Auto. Ins. Co.* v. *Allstate Ins. Co.* (1970) 9 Cal.App.3d 508, 526 [88 Cal.Rptr. 246].) Hence, the duty "may exist even where coverage is in doubt and ultimately does not develop." (*State Farm Mut. Auto. Ins. Co.* v. *Flynt* (1971) 17 Cal.App.3d 538, 548 [95 Cal.Rptr. 296].) However, even where the duty exists in its broadest form and the insurer must provide a defense to false, groundless or fraudulent actions, such a contract provision "does not extend the obligation to defend without limits; it includes only defense to those actions of the nature and kind covered by the policy." (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 274 [54 Cal.Rptr. 104, 419 P.2d 168]; *Williamson & Vollmer Engineering, Inc.* v. *Sequoia Ins. Co.* (1976) 64 Cal.App.3d 261, 276 [134 Cal.Rptr. 427].)

■ In determining whether there is a duty to defend, an insurer is not limited to the facts alleged in the underlying complaint, but may make the determination "from the total facts it learns from all sources." (*State Farm Mut. Auto. Ins. Co.* v. *Flynt, supra,* 17 Cal.App.3d at p. 548; accord, *Dillon* v. *Hartford Acc. & Indem. Co.* (1974) 38 Cal.App.3d 335, 339 [113 Cal.Rptr. 396]; see also *Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d at p. 274.) Where those facts reveal that potential liability does not exist under the policy, the insurer, at its own risk, may refuse to defend the suit. (*State Farm Mut. Auto. Ins. Co.* v. *Flynt, supra,* 17 Cal.App.3d at p. 548.)[2]

■ When plaintiff presented his claim to Signal, after he was served with the complaint in the Simmonds matter, Signal had no facts upon which to base its determination whether it was obliged to provide plaintiff with a defense other than those alleged in the complaint. In tendering a defense, Signal noted those specific potential problems with liability coverage which were apparent from the complaint, but, recognizing plaintiff might be adjudicated liable without running afoul of those limitations, nevertheless tendered a defense since some of the acts at issue were alleged to have occurred during the policy period. Since the complaint alleged misconduct continuing past September 17, 1971, Signal had little choice to the contrary.

By the time CIGA entered the picture, the situation had changed. Signal's policy was in force from September 17, 1971 to September 17, 1972; it

---

[2]To the extent *Fireman's Fund Ins. Co.* v. *Chasson* (1962) 207 Cal.App.2d 801, 805 [24 Cal.Rptr. 726] holds to the contrary, it was implicitly overruled by *Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d 263.

contained no prior acts endorsement and, hence, excluded coverage of acts occurring before inception of the policy period. Despite the complaint's allegation that plaintiff's tortious acts continued until September 26, 1971 (and thus just came within the policy period), subsequent discovery had revealed undisputedly—and CIGA knew—that plaintiff had done nothing whatsoever which concerned the litigant, Simmonds, since some time before September 17, 1971. In other words, no action taken by plaintiff which might form the basis for his liability occurred during the policy period.

Had Signal known these facts at the outset, it would have been justified in denying coverage entirely. When CIGA acquired the duty to determine whether plaintiff had presented a "covered claim," it *did* know these facts. Since, on these facts, plaintiff's claim was not an obligation "imposed by law and arising out of an insurance policy" of Signal (Ins. Code, § 1063.1, subd. (c)(1)(i)), and CIGA had a duty to determine independently whether plaintiff's claim was covered, CIGA was well within its rights in denying plaintiff a defense. (*State Farm Mut. Auto. Ins. Co.* v. *Flynt, supra,* 17 Cal.App.3d at p. 548.)

## II

Plaintiff further contends the trial court erred in granting CIGA's motion to strike allegations by which he sought to recover damages for his emotional distress. In view of the conclusion we have reached *ante,* we need not reach this issue.

The order (judgment) is affirmed.

Hanson (Thaxton), J., and Lucas, J., concurred.