[No. B055061. Second Dist., Div. Three. July 3, 1991.]

CALIFORNIA INSURANCE GUARANTEE ASSOCIATION,
Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
JAKES AT THE SHORE, INC., et al., Real Parties in Interest.

1618

**COUNSEL**

Patterson, Ritner, Lockwood, Zanghi & Gartner, Myrtle E. Arthur, Gregory P. Orland and John S. Popko for Petitioner.

No appearance for Respondent.

LaFollette, Johnson, De Haas & Fesler, Larry Nathenson and James E. Merrimam for Real Parties in Interest.

## OPINION

**CROSKEY, J.**—Petitioner California Insurance Guarantee Association (CIGA) seeks a writ of mandate directing the respondent court to vacate its order staying the trial of a declaratory relief action commenced by CIGA to determine issues of coverage under a liability policy issued by a now insolvent insurer. As we conclude that CIGA has no better or greater right to a trial preference for resolution of disputed coverage issues than does an ordinary insurer, we deny the writ.

### FACTUAL AND PROCEDURAL BACKGROUND

Prior to June 11, 1986, Mary Collins (Collins) brought an action (herein the underlying action) against her former employer, Jakes at the Shore, Inc. (Jakes) and one Noah Peete (Peete) who had been her supervisor at Jakes where she had worked as a waitress. On that date she filed a first amended complaint in which she alleged causes of action for (1) wrongful discharge, (2) breach of the implied covenant of good faith and fair dealing, (3) intentional infliction of emotional distress, (4) unlawful discrimination against a physically and medically handicapped person, (5) sexual harassment and (6) age discrimination.[1]

In summary,[2] Collins alleged in her complaint that (1) she had been employed by Jakes on the understanding that she would continue to be employed as long as she properly performed her duties and would not be terminated except for just cause; (2) she worked at Jakes from November 9, 1983, until she was terminated on September 20, 1985; (3) she was never, during that period, reprimanded for poor job performance; (4) in June of 1984 she was diagnosed as having breast cancer and underwent a mastectomy; (5) as a result she was on sick leave from June until July 1984 when she returned to work; (6) prior to August 29, 1985, she advised Peete that she

---

[1]The action is entitled Collins v. Jakes at the Shore and bears Los Angeles Superior Court case number SWC 85009. The record does not disclose when the original complaint was filed or how or in what manner its allegations differed, if at all, from those of the first amended pleading .

[2]The allegations of Collins's complaint are only generally set forth. We have no need to reach either the merits or the adequacy of these allegations, but describe them only with that particularity necessary to illuminate the coverage issues raised by CIGA's action.

was going to have reconstructive surgery on her breasts; (7) she was again placed on sick leave with the understanding that she would return to work on September 20, 1985; (8) she was terminated on that date despite her willingness and ability to return to work following the reconstructive surgery; (9) such termination was in violation of the implied promise that she would not be terminated except for just cause and was in violation of the California Fair Employment and Housing Act (FEHA);[3] (10) she was terminated because of her mastectomy and reconstructive surgery rather than for any failure on her part to perform or comply with her employer's policies or requirements; (11) following her original surgery she was repeatedly subjected to pervasive, derogatory, degrading and disparaging references by Peete to her body, physical condition and age,[4] which remarks were made in a sexually slanderous way; and (12) she was subjected to malicious, intentional, extreme and outrageous conduct which caused her to suffer severe physical and emotional distress.

Jakes[5] tendered the defense of this action to its general liability insurer, Integrity Insurance Company (Integrity) and to its workers' compensation carrier, West American Insurance Company (West American).[6] Integrity undertook to provide a defense to Jakes under a reservation of rights; West American refused to provide Jakes with any defense whatsoever.

On March 9, 1987, Integrity was declared insolvent by an order of the superior court. Pursuant to the provisions of Insurance Code section 1063 et seq., CIGA became responsible for discharging the responsibilities of Integrity with respect to all "covered claims." On June 8, 1988, CIGA filed its second amended complaint for declaratory relief against Jakes, Peete and West American who are the real parties in interest herein (hereinafter collectively real parties).[7] By this action, CIGA sought a judicial determination that the claim asserted by Collins against Jakes, given the provisions of Integrity's policy,[8] as not a "covered claim" as that term is defined by the

---

[3]Government Code section 12900 et seq.

[4]Collins was 51 years of age on the date of her termination.

[5]Presumably, whatever decision is made with respect to coverage for Jakes's liability will also be relevant to those allegations regarding Peete's conduct, at least to the extent that Jakes's has potential liability therefore. In addition, the Integrity policy includes as "insureds" officers, directors and employees.

[6]West American, a member of the Ohio Casualty Group of Insurance Companies, was erroneously sued herein as Ohio Casualty Company.

[7]As was the case with Collins, the record does not disclose the contents or date of filing of CIGA's earlier pleadings in this action.

[8]The relevant portions of Integrity's policy, relied upon by CIGA, provide:

a. Section II, part 1, the basic insuring provision states: "The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of [¶] *bodily injury* or [¶] *property damage* [¶] to which this insurance applies, caused

relevant provisions of the Insurance Code and that, in any event, there was coverage under the West American policy which, if true, would mean, pursuant to statute, that CIGA had no responsibility for coverage.

CIGA moved for summary judgment or, in the alternative, summary adjudication of issues. The alternative motion was granted on October 15, 1990, as to those claims asserted by Collins in the underlying action relating to wrongful termination and breach of the implied covenant of good faith. The court held that, as a matter of law, those allegations did not describe an "occurrence" as that term was defined in Integrity's policy. Therefore, there was no coverage under the policy for those claims and CIGA was entitled to a summary adjudication thereon.

West American and Jakes then brought a joint motion seeking a stay of further proceedings in the declaratory relief action pending the trial and determination of the underlying action. They claimed, and the trial court apparently concluded, that the declaratory relief action (1) would require findings of fact which would necessarily be required in the underlying action[9] and (2) a risk existed that inconsistent findings might result.

by an *occurrence*, . . . and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage . . . ." (Italics added.)

b. The word "occurrence" is defined as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage *neither expected nor intended* from the standpoint of the *insured*." (Italics added.)

c. Exclusion (j) provides in pertinent part: "This insurance does not apply: . . . [¶] to *bodily injury* to any employee of the *insured* arising out of and in the course of his employment by the *insured* or to any obligation of the *insured* to indemnify another because of damages arising out of such injury" (Italics added.)

d. Integrity's policy provisions regarding "personal injury liability" states in pertinent part: "The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as *damages* because of injury (herein called '*personal injury*') sustained by any person or organization arising out of one or more of the following offenses committed in the conduct of the named insured's business: . . . [¶] Group B—the publication or utterance of a libel or slander or of other defamatory or disparaging material, or a publication or utterance in violation of an individual's right of privacy . . . ." (Italics added.)

e. Exclusion (c) to the personal injury coverage provides: "This insurance does not apply: . . . [¶] To *personal injury* sustained by any person as a result of an offense directly or indirectly related to the employment of such person by the *named insured*." (Italics added.)

[9]In order to prevail in its declaratory relief action, CIGA must establish that (1) it has no duty to defend Jakes under the terms of the Integrity policy or (2) Collins's claim is covered under the West American policy and is therefore not a "covered claim." With respect to the first alternative, CIGA claims that coverage does not exist because Collins's claim of "bodily injury" necessarily occurred in the course of her employment by Jakes and that the alleged disparaging remarks are not covered under the "personal injury" portion of the policy due to application of an exclusion relating to matters occurring during employment. As factual disputes exist with respect to these issues, they must be resolved before the legal issues

Therefore, the court granted the motion on October 18, 1990. At the same time it vacated the then pending trial date of the declaratory relief action.

It is from this order that CIGA seeks relief by writ of mandamus. In order to address the issue raised by CIGA's claim to a special preference, we issued an alternative writ on February 1, 1991.

### CONTENTIONS OF THE PARTIES

CIGA contends that (1) by virtue of its special statutory character and responsibilities it should not be treated like any other insurance company, and (2) if the stay is not lifted, the prior trial of the underlying action will cause irreparable injury to CIGA in that it will be required to incur the unrecoverable cost of defending that action even though it may have no obligation to do so.[10]

West American and Jakes on the other hand, argue that (1) the trial court has the discretion to determine the priority of trial for a declaratory relief action raising insurance coverage issues, (2) the trial of the declaratory relief action will necessarily depend upon and thus require findings of fact to be made in the underlying action, and (3) a possibility of inconsistent findings will exist unless the underlying action is tried first since Collins is not a party to the declaratory relief action.

### DISCUSSION

1. *The Court Has Discretion to Set the Priority of a Declaratory Relief Action*

■ Generally, an action in declaratory relief will not lie to determine an issue which can be determined in the underlying tort action. "The

---

regarding coverage can be decided. This is true whether the issue is CIGA's duty (1) to defend (where *potential* coverage need only be shown) or (2) to indemnify (where *actual* coverage is the issue). Likewise, CIGA's argument that it is statutorily absolved of coverage liability because West American, a solvent insurer, has coverage, also depends on factual questions regarding Collins's alleged injuries and whether they occurred in the course of employment or arose out of her employment. West American is Jakes's workers' compensation carrier and the extent of its responsibility, if any, clearly will depend upon the resolution of these factual issues.

Obviously, all of these factual issues will necessarily be resolved in the underlying action to which Collins is a party. If resolved first in the declaratory relief action, Collins would not be bound thereby and could conceivably try them to a different conclusion in her action, to the very substantial prejudice of Jakes.

[10]Other issues raised by CIGA go directly to the ultimate issue of whether the claims raised by Collins are "covered claims" within the meaning of applicable Insurance Code sections. As those issues necessarily involve unresolved questions of fact, we cannot determine or address them here. We decide only the questions surrounding the trial court's refusal to give a priority to the trial of CIGA's declaratory relief action.

declaratory relief statute should not be used for the purpose of anticipating and determining an issue which can be determined in the main action. The object of the statute is to afford a new form of relief where needed and not to furnish a litigant with a second cause of action for the determination of identical issues." (*General of America Ins. Co.* v. *Lilly* (1968) 258 Cal.App.2d 465, 470 [65 Cal.Rptr. 750].) "Under section 1061 of the Code of Civil Procedure the court may refuse to exercise the power to grant declaratory relief where such relief is not necessary or proper at the time under all of the circumstances. The availability of another form of relief that is adequate will usually justify refusal to grant declaratory relief. The refusal to exercise the power is within the court's legal discretion and will not be disturbed on appeal except for abuse of discretion. (*Girard* v. *Miller* [1963] 214 Cal.App.2d 266, 277. . . .)" (*Id.* at p. 471; see also, *State Farm etc. Ins. Co.* v. *Superior Court* (1956) 47 Cal.2d 428, 433 [304 P.2d 13].)

 It appears that the trial court concluded that the prior determination of CIGA's declaratory relief action would contravene this general rule as it would necessitate the resolution of one or more factual issues which would have to be determined in the underlying action (see fn. 9, *ante,* p. 1622). Since such a result could be prejudicial to Jakes and West American, the trial court exercised its discretion to stay CIGA's action. Given the prospect of inconsistent verdicts with respect to factual issues common to both matters, we would have no trouble concluding that the trial court did not abuse its discretion if the insurer seeking the declaratory relief were other than CIGA. The question before us is whether a different result is compelled because of CIGA's special status.

### 2. *CIGA Is Not an Ordinary Insurer but Nonetheless Has Many of the Same Burdens*

CIGA was created by legislative act in 1969 (Ins. Code, § 1063 et seq.) to establish a fund from which insureds could obtain both "financial and legal assistance in the event their insurers became insolvent, [that is] 'to provide insurance against "loss arising from the failure of an insolvent insurer to discharge its obligations under its insurance policies." (Ins. Code, § 119.5.)' (*Biggs* v. *California Ins. Guarantee Assn.* (1981) 126 Cal.App.3d 641, 644 [179 Cal.Rptr. 16]. . . .)" (*Isaacson* v. *California Ins. Guarantee Assn.* (1988) 44 Cal.3d 775, 784 [244 Cal.Rptr. 655, 750 P.2d 297].)

 "As other courts have recognized, CIGA is not, and was not created to act as, an ordinary insurance company. [Citation.] It is a statutory entity that depends on the Guarantee Act for its existence and for a definition of the scope of its powers, duties, and protections. 'CIGA is an involuntary,

unincorporated association of insurers admitted to transact business in California. Each insurer is required to participate in CIGA as a condition of doing business in this state. The statutory purpose of CIGA is to provide for each insurer member insolvency insurance to pay the claims arising out of policies issued by an [insurer who becomes insolvent]. . . . Funds for the payment of such claims are obtained by collecting premium payments from its members. . . . CIGA is limited to the payment of "covered claims" . . . .' [Citation.]" (*Isaacson* v. *California Ins. Guarantee Assn., supra*, 44 Cal.3d at p. 786, quoting from *In re Imperial Ins. Co.* (1984) 157 Cal.App.3d 290, 293 [203 Cal.Rptr. 664].)

CIGA is correct when it argues that its liability is statutorily limited (Ins. Code, § 1063.12, subd. (a)) to the amount of "covered claims." Thus, it is fair to say that CIGA's role "differs from that of the ordinary insurer. It was created to provide relief in the case of an *insurance carrier* becoming insolvent [citation] and in so doing is given certain powers and certain protections. CIGA, however, does not 'stand in the shoes' of the insolvent insurer for all purposes." (*Biggs* v. *California Ins. Guarantee Assn.* (1981) 126 Cal.App.3d 641, 645 [179 Cal.Rptr. 16].) (Italics in the original.)

"CIGA is authorized only to 'pay and discharge covered claims.' (Ins. Code, § 1063.2, subd. (a).) It is only *'in connection therewith'* that CIGA is to 'pay for or furnish loss adjustment services and defenses of claimants *when required* by policy provisions. . . .' (*Ibid.*, italics added.) In addition, CIGA 'shall be a party in interest in all proceedings *involving a covered claim*, and shall have the same rights as the insolvent insurer would have had if not in liquidation . . . .' (Ins. Code, § 1063.2, subd. (b), italics added.) *It is unequivocally clear the scope of CIGA's rights and duties turns on the definition of 'covered claim.'*

"Subdivision (c)(1) of Insurance Code section 1063.1 defines 'covered claims' as 'the obligations of an insolvent insurer, (i) imposed by law and arising out of an insurance policy of the insolvent insurer; (ii) which were unpaid by the insolvent insurer; (iii) which are presented as a claim to the . . . association . . . . (v) for which the assets of the insolvent insurer are insufficient to discharge in full . . . .' The remainder of subdivision (c) enumerates nine separate categories of claims clearly 'arising out of an insurance policy of the insolvent insurer' which nevertheless are not 'covered claims.' *Since 'covered claims' are not coextensive with an insolvent insurer's obligations under its policies, CIGA cannot and does not '"stand in the shoes" of the insolvent insurer for all purposes.'* (*Biggs* v. *California Ins. Guarantee Assn.* (1981) 126 Cal.App.3d 641, 645 . . . .) *Indeed, CIGA is 'expressly forbidden' to do so except where the claim at issue is a 'covered*

claim.' (*E. L. White, Inc.* v. *City of Huntington Beach* (1982) 138 Cal.App.3d 366, 370-371 . . . .) *It necessarily follows that CIGA's first duty is to determine whether a claim placed before it is a 'covered claim.'* " (*Saylin* v. *California Ins. Guarantee Assn.* (1986) 179 Cal.App.3d 256, 262 [224 Cal.Rptr. 493], italics added to this paragraph and to the last sentence of the prior paragraph.) But what happens when the discharge of CIGA's "first duty" requires a resolution of factual issues which are also present in the underlying action upon which CIGA's alleged liability is based? We have discovered no case which addresses this question.

■ In our view, a determination of this issue must begin with a recognition that in spite of the statutory limitations on CIGA's liability it still has substantial obligations to the insureds of the insolvent insurer. As the Supreme Court stated, in a different but relevant context, "the scope of [CIGA's] obligation to pay and defend claims is defined in terms of the underlying insurance policy provisions." (*Isaacson* v. *California Ins. Guarantee Assn.*, *supra*, 44 Cal.3d at p. 791.) CIGA's statutory duties can best be defined by examining the contractual duties which were imposed upon the now insolvent insurer either by law or such policy provisions. (*Ibid.*)

An insurer has "a duty to defend its insured whenever it ascertains facts which give rise to the potential of liability under the policy." (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 276-277 [54 Cal.Rptr. 104, 419 P.2d 168].) A wrongful failure to provide coverage or defend a claim is a breach of the insurance contract. (*California Shoppers, Inc.* v. *Royal Globe Ins. Co.* (1985) 175 Cal.App.3d 1, 15 [221 Cal.Rptr. 171].) The obligations of CIGA are necessarily coextensive with those burdens imposed on all insurers. Thus, "if CIGA improperly denies coverage or refuses to defend an insured on a 'covered claim' arising under an insolvent insurer's policy, it breaches its statutory duties under the Guarantee Act." (*Isaacson* v. *California Ins. Guarantee Assn.*, *supra*, 44 Cal.3d at p. 792.)

■ Where an insurer questions the existence of coverage as CIGA does here, the alternative of an early declarative determination of the issue exists. (See *State Farm Mut. Auto Ins. Co.* v. *Allstate Ins. Co.* (1970) 9 Cal.App.3d 508, 527 [88 Cal.Rptr. 246].) This right, however, is not without its limitations. While a declaratory relief action is normally entitled to a priority in trial setting (Code Civ. Proc., § 1062.3, subd. (a)), if the underlying action has an approaching trial date an insurer has no right to seek a delay of that trial pending a resolution of the coverage issue in a separate declaratory relief action.

In addition, as we have already generally discussed, a separate declaratory action where the coverage question turns on facts to be litigated in the underlying action (e.g., whether the insured acted "intentionally") is not permitted. This is so because the insurer may well owe a defense in the underlying action even if the facts ultimately determined in that action show that there was no coverage. If the rule were otherwise, "any time an insurance company had a questionable claim due to an uncertain exclusion clause, it could defend, under a reservation of rights, and immediately bring an action for declaratory relief seeking to rid itself of the arguable duty to defend. *As a result, the duty to defend would eventually be no broader than the duty to indemnify.*

"... . . . . . . . . . . . . . . . . . . . . . . .

"[A]n insurer [can]not rely on an exclusion limiting liability assumed under contract where the validity of the [contract] was at issue in the very action for which a defense was sought. [Citation.]" (*Cal-Farm Ins. Co.* v. *TAC Exterminators, Inc.* (1985) 172 Cal.App.3d 564, 580-581 [218 Cal.Rptr. 407]; italics added.)

We see no reason for the result to be different here merely because CIGA is the insuring entity. There does not appear to be any policy reason why CIGA should be entitled to a stay of the underlying action brought by Collins so that coverage under the Jakes policy can first be resolved. CIGA argues it will suffer serious prejudice if it is required to provide a defense, the cost of which may not be recoverable and that such an expenditure will unnecessarily drain the limited funds available to pay claims. However, that unpleasant prospect is one that is routinely faced by all insurers whenever a *potential* for coverage exists. Since we cannot determine from this record that coverage does not exist, CIGA has a duty to defend. Pending the resolution of threshold factual questions the potential for coverage is clearly present.

If we were to recognize, simply because the insuring entity is CIGA, an exception to the general rule restricting declaratory relief actions where coverage turns upon facts to be litigated in the liability action, a very substantial and prejudicial burden would be imposed upon the insured. As Jakes argues, it could be exposed to inconsistent judgments which impose liability to Collins in the underlying action, but determine the absence of coverage in the declaratory relief action. Such a result runs entirely counter to the whole purpose and philosophy behind CIGA which is to *protect*

insureds, not place upon them unusual risks they would not have faced if their insurer had not become insolvent.[11]

We therefore conclude that, in spite of CIGA's burden to make the earliest possible determination as to the existence of "covered claims," no different or special rule is appropriate to the trial scheduling of a declaratory relief action to determine coverage merely because CIGA is the insurer seeking to resolve the issue. Where, as here, the question of coverage turns upon one or more factual issues which will necessarily be resolved in the underlying action, then it was entirely appropriate for the trial court to stay the declaratory relief action pending resolution of those issues. There was no abuse of discretion.

## DISPOSITION

The alternative writ is discharged. The peremptory writ is denied.

Klein, P. J., and Hinz, J., concurred.

---

[11]That an insured should not be placed in a worse position by the accident of insurer insolvency was recognized in *E. L. White, Inc.* v. *City of Huntington Beach* (1982) 138 Cal.App.3d 366 [187 Cal.Rptr. 879]. In rejecting an indemnity claim (by a subrogated insurer of a codefendant) against an insured whose insurer had became insolvent the court stated: "To the extent that the CIGA legislation discriminates between subrogation plaintiffs with claims against insureds of insolvent insurers and subrogation plaintiffs with claims against insureds of solvent insurers or against those who are uninsured, the classification certainly has a fair relationship to the statutory purpose. *If such a classification were not made, there would be situations where the person meant to be protected by the CIGA legislation would be left vulnerable just because his insurer had become insolvent.*" (*Id.* at p. 373.) (Italics added.)