[No. B025629. Second Dist., Div. Two. Aug. 31, 1987.]

STATE FARM MUTUAL AUTOMOBILE INSURANCE
COMPANY, Plaintiff and Respondent, v.
LANIDA PATTON, Defendant and Appellant.

**COUNSEL**

Leach, Biesty & McGreevy and Clinton T. McCool for Defendant and Appellant.

Michael A. Dolan and Ira Cohen for Plaintiff and Respondent.

**OPINION**

**ROTH, P. J.**—On April 21, 1985, appellant Lanida Patton was involved in an automobile accident with Martha McCardell.[1] At that time, appellant had automobile insurance issued by respondent State Farm. McCardell told Patton she (McCardell) was insured with Workmen's Automobile Insurance Company.

---

[1] McCardell is not a party to this appeal.

Following the accident, appellant retained counsel who contacted Workmen's. By a letter dated June 10, 1985, Workmen's informed appellant's counsel that McCardell's coverage extended, in fact, only to remuneration for physical damage. This information was subsequently confirmed with the Department of Motor Vehicles. Hence, as to appellant's claim for personal injuries sustained as a result of the accident with McCardell, McCardell was an "uninsured motorist." Appellant's automobile policy issued by respondent State Farm included coverage for injuries caused by uninsured motorists.

On November 25, 1985, appellant's counsel wrote to respondent State Farm. The letter noted McCardell was not insured and that appellant had incurred $4,529 in medical expenses. The letter concluded: "This information should enable you to evaluate this case and decide whether you wish to litigate it. We are ready to compromise this case at this time for $22,725.00.

"After you have had an opportunity to review these documents, please call Daniel Nelson of my office who is handling this case so that you may discuss this matter further."

On January 7, 1986, State Farm responded, in part: "Before we can consider your claim for payment under the Uninsured Motorist Coverage, we request that we be able to secure our insured's statement of accident facts as is her duty under the policy. Also, we request that you provide us with actual documentation proving that the other vehicle and/or driver involved is uninsured."

On April 11, 1986, appellant filed suit in the municipal court against McCardell.

Because appellant never answered State Farm's letter of January 7, State Farm sent another letter on May 19, 1986, to appellant's counsel reiterating its request for documentation that McCardell was uninsured and for a statement from appellant about the accident. The letter concluded: "I would appreciate your extra effort in these matters so that we may get this case moving toward settlement."

On August 12, 1986, appellant wrote State Farm, ". . . formally requesting that arbitration proceedings begin in accordance with the California Insurance Code section 11580.2 (i-3), for the accident [between appellant and McCardell]."

Respondent State Farm declined to arbitrate whereupon appellant filed a petition in superior court to compel arbitration. Respondent State Farm

then moved to dismiss appellant's petition claiming she had waived her right to arbitrate because she had failed to comply with the requirements of subdivision (i) of Insurance Code section 11580.2 that she either demand arbitration within a year of the accident or inform State Farm within a year of the accident that she had filed suit against McCardell.[2] The trial court granted respondent's motion. This appeal followed. We affirm.

As mandated by section 11580.2, respondent's policy required it to pay to plaintiff whatever sum she would have been entitled to recover as personal injury damages from an uninsured motorist (e.g., McCardell), if those damages arose out of an automobile accident caused by the uninsured motorist's negligence. The policy further provided that if plaintiff and respondent disputed either plaintiff's right to recover damages from the uninsured motorist or the amount of damages due, the dispute would be resolved between plaintiff and respondent by arbitration.[3]  "An insurer paying a claim under its uninsured motorist coverage becomes subrogated to the rights of the insured against the uninsured motorist. The effect of [§ 11580.2] is to guarantee to an insured motorist the minimum financial responsibility of another motorist who has wrongfully inflicted personal injuries on him. It is readily apparent that the liability of the insurer (1) is secondary and derivative, and (2) is contingent on the insured's right to legal recovery against the tortfeasor. . . . [¶] [Hence,] California law now provides dual protection for an insured motorist; he can sue a motorist tortfeasor within one year, whether the tortfeasor is insured or uninsured; or he can institute arbitration proceedings against his own insurer within one year if the tortfeasor is uninsured." (*Firemen's Ins. Co.* v. *Diskin* (1967) 255 Cal.App.2d 502, 505-506, and 509-510 [63 Cal.Rptr. 177] [hg. den.].)

■ The case at bench involves analysis of the statutory condition precedents to permitting an insured (e.g., appellant) to enforce through arbitration with her insurer her claim for personal injury damages caused by an uninsured motorist.

Subdivision (i) of section 11580.2 sets forth the circumstances under which the insured can proceed against his/her insurance company for an uninsured motorist claim. It states: *"No cause of action shall accrue to the insured* under any policy or endorsement provision issued pursuant to this section *unless within one year from the date of the accident*:

---

[2] All statutory references are to the California Insurance Code.

[3] These provisions are consistent with subdivision (f) of section 11580.2 which states, in pertinent part: "The policy or an endorsement added thereto shall provide that the determination as to whether the insured shall be legally entitled to recover damages, and if so entitled, the amount thereof, shall be made by agreement between the insured and the insurer or, in the event of disagreement, by arbitration."

"(1) *Suit for bodily injury has been filed against the uninsured motorist,* in a court of competent jurisdiction *and notice of such suit has been given the insurer,* or

"(2) Agreement as to the amount due under the policy has been concluded, or

"(3) The insured has formally instituted arbitration proceedings." (Italics added.)

The statutory requirement that the insured file suit within one year of the accident against the uninsured motorist has been held to be the pragmatic equivalent of a statute of limitations.

In *Aetna Cas. & Surety Co.* v. *Superior Court* (1965) 233 Cal.App.2d 333, 340 [43 Cal.Rptr. 476], the Court of Appeal analyzed the predecessor to section 11580.2, subdivision (i)(1) and concluded it was ". . . intended to set controversies at rest by foreclosing consideration thereafter as to the merits of the claim. To reject a strict application of the law in favor of 'broad principles of justice and equity' would make a statute of limitation meaningless. The Legislature doubtless had in mind that delay in asserting an uninsured motorist claim can seriously prejudice the insurer. For example, the insurer's subrogation right to go against the negligent third party (as provided in § 11580.2, subd. (f)) will be lost unless something is done within one year after the accident. It appears that, in setting up subdivision (h), a one-year limitation which will bar the policyholder's cause unless certain steps are taken within the year, the Legislature intended to provide a legal limitation, to be recognized by a court in a proper case, in accordance with legal standards upon which courts decide cases."

The California Supreme Court cited the foregoing analysis with approval in *Freeman* v. *State Farm Mut. Auto. Ins. Co.* (1975) 14 Cal.3d 473, 484 [121 Cal.Rptr. 477, 535 P.2d 341].

Subsequently, the Legislature amended the statute, effective January 1, 1984, to add the further requirement that the insurer has been given "notice of such suit." This provision has not yet been construed. In dicta, Division Seven of this court has noted: "We find the revised statute less than clear as to whether notice of the suit must be given to the carrier within the first year following the accident in order to toll the statute, or whether notice may be given at any time thereafter. Because the amendment is not applicable to the case at bar, we do not reach this question. We do, however, invite the Legislature to further clarify this new condition." (*Interinsurance Ex-*

*change* v. *Garcia* (1984) 160 Cal.App.3d 419, 422, fn. 1 [206 Cal.Rptr. 621].) The Legislature declined Division Seven's offer to clarify the statute so we must now construe it.

Significantly, the statute is written in the conjunctive, not the disjunctive. That is, it clearly states that in order for the insured to preserve his/her claim against the insurer, the insured must, (1) file suit against the uninsured motorist; *and* (2) give notice to the insurer of such suit. Moreover, the language in regard to giving notice is in the past tense, e.g., ". . . notice of such suit *has been given* the insurer." (Italics added.) Hence, given the policy considerations outlined in *Aetna Cas. & Surety Co.* v. *Superior Court, supra,* 233 Cal.App.2d 333 as to why the statutory provision should be construed as a statute of limitations, a reasonable interpretation of the new provision is that the insured must give notice to his/her insurer within one year of the accident that a lawsuit has been filed against the uninsured motorist if the insured wishes to preserve the right to recover from the insurer pursuant to the uninsured motorist provisions of the issued policy.

To reach a contrary conclusion would potentially extend beyond one year the financial responsibility of the insurer which, after all, is only derivatively liable for the fault of another, to wit, the uninsured motorist. This would then potentially create a supplemental liability of greater duration than the original liability, as the insured must file suit against the tortfeasor/uninsured motorist within one year of the accident. (Code Civ. Proc. § 340.) We do not believe the Legislature intended to erect a statutory scheme by which the entity secondarily responsible could be held to a longer period of accountability than the person primarily responsible. As the insurance company is subrogated to its insured in seeking recovery from the uninsured motorist, compelling the insured to give notice within one year of the accident that suit has been filed will allow the insurance company to preserve its rights vis-à-vis a subsequent lawsuit against the uninsured motorist by taking steps to insure evidence is preserved and witnesses are interviewed. We therefore conclude that because section 11580.2 is an adjunct to the right to recover damages for personal injuries, the insured must within one year of the accident file suit against the uninsured motorist and give the insurer notice thereof. (See *Firemen's Ins. Co.* v. *Diskin, supra,* 255 Cal.App.2d at pp. 509-510.)

At bench, it is undisputed that appellant did not give *written* notice to State Farm within one year of the accident that she had sued McCardell. Nonetheless, appellant urges she complied with the statute by giving oral

notice.[4] We disagree. Appellant cites no authority for this novel proposition. We do not believe it is reasonable to construe the statute as permitting oral notice. The existence of a writing confirms the fact that notice was given and the contents of that communication, and, thus, precludes unnecessary litigation as to whether oral notice had ever been conveyed.

Morever, section 38 of the Insurance Code states: "Unless expressly otherwise provided, any notice required to be given to any person by any provisions of this code may be given by mailing notice, postage prepaid, addressed to the person to be notified, at his residence or principal place of business in this State. The affidavit of the person who mails the notice, stating the facts of such mailing, is prima facie evidence that the notice was thus mailed."

And section 8 of the Insurance Code provides: "Writing includes any form of recorded message capable of comprehension by ordinary visual means. Whenever any notice, report, statement or record is required or authorized by this code, it shall be made in writing in the English language unless it is otherwise expressly provided."

Hence, in view of the salutary purpose of requiring written notice, and the implied thrust of sections 8 and 38 that notice under the Insurance Code shall be in writing, we conclude that the Legislature intended that the notice required by section 11580.2, subdivision (i)(1) be given in writing.

Because appellant failed to give written notice to respondent State Farm within one year of the accident that she had filed suit against McCardell,[5] the trial court properly concluded appellant's action to compel respondent to arbitrate was barred.[6]

---

[4] In support of that claim, appellant submitted a declaration from a law clerk employed by her attorney who averred: "In the course of the handling of this lawsuit, I discussed this case with Warren Sherwood, the Claims Specialist at State Farm Mutual Automotive Insurance Company, on several occasions and informed Mr. Sherwood by telephone that the lawsuit against the uninsured motorist had been filed timely and that we were pursuing an uninsured motorist claim on behalf of [appellant] Ms. Patton." Quite apart from the fact that this declaration does not even affirmatively allege that such notice was given to respondent within one year of the accident, e.g., by April 21, 1986, the declarant fails to indicate with *any* specificity the date, time, and content of said conversations. As such, it was a patently inadequate attempt to establish the fact of oral notice, assuming arguendo oral notice would be sufficient.

[5] Appellant's argument that respondent should be estopped to assert her failure to comply with the one year statute is simply not supported by the record.

[6] Alternatively, appellant urges she complied with subdivision (i)(3) of section 11580.2 in that she "formally initiated arbitration proceedings" within one year of the accident through her letter of November 25, 1985, to State Farm. This claim is patently frivolous. The letter, as

The order appealed from is affirmed.

Compton, J., and Fukuto, J., concurred.

---

noted earlier, merely set forth appellant's medical expenses and concluded: "This information should enable you to evaluate this case and decide whether you wish to litigate it. We are ready to compromise this case at this time for $22,725.00. [¶] After you have had an opportunity to review these documents, please call Daniel Nelson of my office . . . so that you may discuss this matter further." Clearly, this letter is neither a demand for arbitration nor a formal initiation of arbitration proceedings.