[No. B024799. Second Dist., Div. Three. May 3, 1988.]

ROY REED, Plaintiff and Appellant, v.
CALIFORNIA INSURANCE GUARANTEE
ASSOCIATION, Defendant and Respondent.

**COUNSEL**

Terrence J. Mix, Charles D. Sneathern and Patty Mortl for Plaintiff and Appellant.

Clausen, Harris & Campbell, Marie D. Clause, Stanley T. Gilliam and Hugh G. Radigan for Defendant and Respondent.

**OPINION**

**DANIELSON, J.**—Plaintiff and appellant Roy Reed appeals from the judgment entered in favor of defendant and respondent California Insur-

ance Guarantee Association (CIGA) in an action for declaratory relief. We affirm the judgment.

## INTRODUCTION

In this proceeding, we are called upon to determine whether a third party claim against an insured, whose insurer became insolvent within six-months after entry of the insured's default, is binding upon CIGA, where CIGA did not move to set aside the default within the six-month period of Code of Civil Procedure section 473, the insured failed to cooperate in CIGA's attempt to have it set aside after expiration of the six-month period, and the claimant refused to voluntarily set it aside, but instead joined with the insured in stipulating that judgment be entered in the claimant's favor. We conclude the trial court properly determined that CIGA was not bound by the judgment in the underlying action (former Ins. Code, § 1063.2, subd. (f)), and affirm the judgment herein.

## FACTS AND PROCEDURAL HISTORY

Reed sued CIGA, Signal Insurance Company (Signal) and insurance agent Frank B. Hall and Company, Nettleship Division (Nettleship), alleging causes of action for breach of the statutory duty of good faith and fair dealing (Ins. Code, § 790.03), intentional infliction of emotional distress, negligent infliction of emotional distress, breach of contract, and breach of the implied covenant of good faith and fair dealing. The lawsuit was ultimately reduced to a single cause of action for declaratory relief against CIGA, and submitted on stipulated facts and documentary evidence. The evidence so submitted established the following.

On June 29, 1977, Reed filed an action against Signal's insured, Robert P. Schooler, alleging legal malpractice and fraud in the handling of Reed's claim based on injuries he allegedly sustained as the result of a motorcycle accident and his subsequent medical treatment. Following unsuccessful attempts made on July 25, 1977, and July 26, 1977, to effect personal service of the summons and complaint upon Schooler at his last known business address, substituted service was effected by leaving copies of the documents at the same location on July 27, 1977, and mailing additional copies to that address on the following day.

Pursuant to Reed's request, a copy of which was mailed to Schooler at the aforementioned address, Schooler's default was entered on September 6, 1977.

Schooler first learned of the pending lawsuit in mid-October 1977. He contacted Reed's attorney who, on January 9, 1978, advised the insurance

agent, Nettleship, that his firm had been retained by Reed in connection with the lawsuit.

On January 10, 1978, Signal was adjudicated insolvent, and the California Insurance Commissioner was appointed to liquidate its affairs. (Ins. Code, § 1011 et seq.) CIGA assumed responsibility for the handling of claims against Signal's insureds to the extent such claims qualified as "covered claims" within the applicable statutes.

On January 12, 1978, Nettleship forwarded copies of the summons and complaint and request to enter default in the underlying action to Signal's counsel, who became CIGA's counsel following Signal's insolvency.

On January 17, 1978, CIGA informed Reed, through his attorney, that Signal had been declared insolvent, that "covered claims" would be processed by CIGA, but that Reed's claim was not a "covered claim."

In February 1978, CIGA requested that Reed consider setting aside the default previously entered against Schooler, indicating that unless it was set aside, CIGA would remain firm in its position that Reed's claim was not a "covered claim."

In March 1978, after sending a reservation of rights letter to Schooler, CIGA retained the law firm of Overton, Lyman & Prince (Overton) to represent Schooler for the limited purpose of moving to set aside the default. A few days later, Reed's counsel inquired as to the reasons for CIGA's characterization of his claim as not a "covered claim"; CIGA responded that its first notice of the claim was by way of Nettleship's letter of January 12, and stated that the claim would become a "covered claim" if Reed voluntarily set aside the default. Counsel for Reed responded that he would not stipulate to setting aside the default, and offered to settle the claim for the $100,000 policy limit.

Overton filed a motion to set aside the default, which was set for hearing on May 1, 1978, and continued to May 8, 1978, at the request of Reed's counsel. In a letter dated April 21, 1978, informing Schooler of this continuance, Overton also stated that Reed had offered to refrain from executing against Schooler's personal assets in exchange for Schooler's stipulation to entry of a default judgment in the amount of $1 million and assignment to Reed of any causes of action Schooler might have against his insurer. Thereafter, Schooler personally discussed this proposal with Reed's counsel.

In a letter of April 24, 1978, counsel for Reed advised Overton that the offer to enter into the stipulated judgment would be withdrawn at 5 p.m. on

the day before the hearing on the motion to set aside the default; counsel also stated that the offer to settle for the policy limit would expire at 5 p.m. on April 28, 1978. Overton communicated this information to Schooler in a letter of April 26, 1978.

On May 2, 1978, Overton informed CIGA of the proposed stipulated judgment, and of Reed's counsel's intent to prove up the default if the motion to set it aside was defeated. Also on that date, Schooler wrote to Overton acknowledging that the firm had advised against entering into the proposed stipulated judgment, and requesting advice as to the merits of rejecting the offer.

In a letter addressed to Overton on May 3, 1978, CIGA reiterated its position that it owed no defense or indemnity obligation as long as the default remained in effect, and that the claim would not be considered a covered one until the default was set aside. On the same day, Overton wrote to Schooler, assuring him there was a good chance the motion set for hearing on May 8 would be successful, and that if the default was set aside, CIGA would consider the claim a covered one and provide him a defense and indemnity. Counsel acknowledged that Schooler had requested a continuance of the hearing for 30 days to relieve his feelings of pressure, but recommended that the matter proceed as scheduled. Overton also wrote to Reed's counsel, reiterating CIGA's position that Reed's claim would not be considered a "covered claim" unless and until the default was set aside.

Thereafter, the motion to set aside the default was continued to June 5, 1978, pursuant to Schooler's demand and against Overton's advice. On May 9, 1978, CIGA notified Schooler that it was terminating the courtesy defense theretofore provided by Overton, and that until such time as the default was set aside, CIGA would provide neither coverage nor defense. Overton then requested that Schooler execute a substitution of attorney form, and forwarded to him forms of a judgment pursuant to stipulation, stipulation for judgment, and covenant not to execute and assignment of causes of action, together with a message from Reed's counsel requesting that he execute and return the documents before 5 p.m. on May 24, 1978, to avoid Reed's proving up the default.

On May 30, 1978, Overton successfully moved to be relieved as Schooler's counsel and notified him of the court's ruling, as well as the fact that the motion to set aside his default was still scheduled for hearing on June 5, 1978.

On July 24, 1978, the stipulation for judgment and the covenant not to execute and assignment of causes of action were filed with the court. On

August 7, 1978, the judgment pursuant to stipulation, providing for Reed's recovery of $1 million from Schooler, was entered in the underlying action.

The trial court denied Reed declaratory relief against CIGA, finding (1) the claim against Schooler was not a "covered claim" because CIGA was not notified of it until after Schooler's default was entered, (2) Schooler violated the duty of assistance and cooperation required by the policy and by Insurance Code section 1063.4, subdivision (a), and (3) claims asserted following entry of default, or by an assignee, or upon a stipulated judgment, are not "covered claims."

## CONTENTIONS

Reed contends nothing in the applicable statute excludes his claim from consideration as a "covered claim," in that he did not seek to enforce a default judgment against CIGA, and he did not seek relief based on a stipulated judgment or an assignment of rights. Reed also contends CIGA was estopped from denying coverage "by virtue of its coercive and unfair conduct in handling [the] claim."

CIGA contends a claim as to which a default has been entered does not constitute a "covered claim," Reed's causes of action against Schooler merged into the stipulated judgment, neither the facts nor the law support Reed's estoppel argument, and Schooler breached his duty of cooperation.

## DISCUSSION

■ CIGA " 'is an involuntary, unincorporated association of insurers admitted to transact business in California. Each liability insurer, as a condition of its authority to transact insurance in this state, is required to participate in the association. (Ins. Code, § 1063.) . . . The statutory duty of CIGA is to provide for each member insolvency insurance to pay some (but not all) claims arising out of an insurance policy of an insolvent insurer. (Ins. Code, §§ 119.5, 1063 et seq.)' [Citation.] [¶] CIGA is authorized only to 'pay and discharge covered claims.' (Ins. Code, § 1063.2, subd. (a).) It is only *in connection therewith* that CIGA is to 'pay for or furnish loss adjustment services and defenses of claimants *when required* by policy provisions. . . .' (*Ibid.,* italics added.) In addition, CIGA 'shall be a party in interest in all proceedings *involving a covered claim,* and shall have the same rights as the insolvent insurer would have had if not in liquidation . . . .' (Ins. Code, § 1063.2, subd. (b), italics added.) It is unequivocally clear the scope of CIGA's rights and duties turns on the definition of 'covered claim.' " (*Saylin* v. *California Ins. Guarantee Assn.* (1986) 179 Cal.App.3d 256, 261-262 [224 Cal.Rptr. 493].)

Under the statutory scheme governing CIGA, "covered claims" are not coextensive with an insolvent insurer's obligations under its policies; therefore, "CIGA cannot and does not ' "stand in the shoes" of the insolvent insurer for all purposes.' [Citation.] Indeed, CIGA is 'expressly forbidden' to do so except when the claim at issue is a 'covered claim.' [Citation.] It necessarily follows that CIGA's first duty is to determine whether a claim placed before it is a 'covered claim.' " (*Saylin* v. *California Ins. Guarantee Assn., supra,* 179 Cal.App.3d at p. 262.)

■ In the present case, CIGA's refusal to pay Reed and the trial court's judgment supporting that refusal were based on the provisions of former subdivision (f) of Insurance Code section 1063.2, which provided that " '[c]overed claims' shall not include any judgments against or obligations or liabilities of the insolvent insurer or the commissioner, as liquidator, or otherwise resulting from alleged or proven torts, *nor shall any default judgment against the insolvent insurer, or against the insured of the insolvent insurer, be binding against the association.*"[1] (Italics added.)

Reed's argument is, essentially, that entry of a default is not the same as a default judgment, and that only the latter, not the former, precludes consideration of a claim by CIGA under former subdivision (f) of section 1063.2. Since only Schooler's default had been entered when CIGA was notified of Reed's claim within the six-month period for setting aside defaults pursuant to Code of Civil Procedure section 473, Reed argues CIGA was obliged to pursue a motion under that section on Schooler's behalf. Having failed to do so, CIGA is, in Reed's view, bound by the stipulated judgment thereafter entered, which was not expressly precluded from consideration as a "covered claim" at the time of the events herein.

It is well settled that the "clear purpose" of the language set forth in former subdivision (f) "is to protect CIGA against collusion and to require simply that the validity of any claim be determined in an adversary setting before being reduced to a judgment which CIGA must honor." (*Biggs* v. *California Ins. Guarantee Assn.* (1981) 126 Cal.App.3d 641, 645 [179 Cal.Rptr. 16].)

In *Biggs,* after CIGA undertook the defense of the Follies Theatre, Inc., in a personal injury case, the Follies's corporate powers were suspended for failure to pay corporate franchise taxes. (Rev. & Tax. Code, §§ 23301, 23301.5, 23302.) The plaintiff successfully moved to strike the Follies's

---

[1] The language previously appearing in subdivision (f) of section 1063.2 appeared even earlier in subdivision (g), and is presently set forth in subdivision (h), of the section. The subdivision was amended in 1984 to add stipulated judgments to those expressly excluded from consideration as "covered claims."

previously filed answer and obtained a default judgment. Thereafter, she brought an action against CIGA for declaratory relief and money damages, and appealed from an adverse judgment. The question was whether (1) the plaintiff should have waived the Follies's incapacity by not raising the issue and permitting CIGA to defend the corporation against plaintiff's action, or (2) CIGA should have paid the taxes due and thus revived the corporation in advance of trial. The court observed that plaintiff, as in all cases, had the burden of pursuing her claim, and knew she would ultimately have to look to CIGA for satisfaction of any judgment she obtained against the Follies. On the other hand, CIGA, as a potential and later actual defendant, was under no duty to take any affirmative action. "Faced with the statutory prohibition against enforcing a default judgment against CIGA, plaintiff nonetheless insisted on asserting the incapacity of Follies in obtaining the default judgment. . . . We conclude that plaintiff having, as she did, the burden of pressing her claim, should have waived the incapacity issue and permitted CIGA to defend. CIGA was under no obligation to advance money in order to 'purchase' its right to defend the action." (*Biggs* v. *California Ins. Guarantee Assn., supra,* 126 Cal.App.3d at p. 647.)

The present case differs from *Biggs,* in that the question here is whether CIGA or the plaintiff Reed was responsible for setting aside the default in order to permit CIGA to defend the claim, and a motion to set aside a default is not without the normal scope of defense of the action, an obligation CIGA assumed upon Signal's insolvency.

Our Supreme Court recently held that when CIGA "improperly denies coverage or refuses to defend an insured on a 'covered claim' arising under an insolvent insurer's policy, it breaches its statutory duties under the Guarantee Act. Furthermore, if the insured, after such a breach by CIGA, pays an adverse judgment, or contributes a reasonable amount in settlement of the claim, the insured has a cause of action against CIGA for reimbursement." (*Isaacson* v. *California Ins. Guarantee Assn.* (1988) 44 Cal.3d 775, 792 [244 Cal.Rptr. 655, 750 P.2d 297].)

Contrary to Reed's assertions, we are not dealing with a simple refusal to defend the insured of an insolvent insurer such as would give rise to an insured's cause of action against CIGA for reimbursement following settlement of the claim *(ibid.),* or estop CIGA from later refusing to pay on the ground that the judgment was taken by default. (*Biggs* v. *California Ins. Guarantee Assn., supra,* 126 Cal.App.3d at p. 647.) Regardless of the merits of its initial refusal to defend, CIGA did ultimately offer a defense for the specific purpose of moving to set aside the default, albeit not within the time frame of Code of Civil Procedure section 473, and promised to defend on the merits once the default was set aside. Since Schooler, who was by then

considering Reed's offer to enter into a stipulated judgment, failed to cooperate with CIGA's efforts to set aside the default, we do not know whether they would have met with success.

Moreover, CIGA requested that the third party claimant, Reed, voluntarily set aside the default to permit the underlying action to be tried on the merits. Reed apparently felt his interests were best served by refusing to do so, and thus placed himself in a position leading inexorably to entry of a default judgment, and loss of his potential claim against CIGA. Faced with that prospect, he induced Schooler to enter into a "stipulated judgment," as such judgments were not then specifically excluded from judgments binding upon CIGA.

We conclude the stipulated judgment in the underlying action is in this case the functional equivalent of a default judgment. Since Schooler's default had been entered when CIGA came into picture, all the stipulation accomplished was to relieve Reed of the necessity to prove up the default. In effect, the stipulation was for entry of a default judgment. In fact, as related above, Reed's original offer to Schooler, communicated to him through Overton in April 1978, was to refrain from executing against Schooler's personal assets in exchange for his stipulation to entry of a *default judgment* in the amount of $1,000,000, and assignment to Reed of any causes of action Schooler might have against his insurer. This is effectively what occurred, and Reed is precluded by former subdivision (f) of Insurance Code section 1063.2 from recovering against CIGA.

### DECISION

The judgment is affirmed.

Klein, P. J., and Arabian, J., concurred.