[No. B046660. Second Dist., Div. Five. Apr. 11, 1991.]

WALTER A. WALTERS et al., Plaintiffs and Appellants, v.
CALIFORNIA INSURANCE GUARANTEE ASSOCIATION,
Defendant and Respondent.

[Opinion certified for partial publication.*]

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion as modified is certified for publication with the exception of parts IV(C) and IV(D).

COUNSEL

James S. Marinos and Gregory S. Larson for Plaintiffs and Appellants.

Hawkins, Schnabel & Lindahl and Kelley K. Beck for Defendant and Respondent.

OPINION

TURNER, P. J.—

## I. INTRODUCTION

Plaintiffs, Walter A. Walters, Janmarie Walters, Ernest C. Filice and Pauline Filice appeal a summary judgment entered against them in favor of defendant, California Insurance Guarantee Association (CIGA). We affirm.

## II. PROCEDURAL HISTORY

In September 1982, plaintiffs along with Heritage Home Loans and other corporate entities filed a complaint in the Superior Court of Orange County (hereinafter the underlying action) against Heritage Bank and two of its officers, Douglas E. Patty and Herbert Slezinger (Slezinger). The complaint sought damages against defendants on a number of theories including fraud, conversion and emotional distress for alleged misconduct in handling plaintiffs' bank accounts. The action against the bank and the employees was resolved by a stipulated judgment in favor of plaintiffs for $1.8 million. The judgment was entered on September 17, 1987, and states that CIGA through its attorney, Robert Walker, "did not specifically accept or adopt the settlement . . . ."

During the period of time in which plaintiffs were injured, the bank and its officers and directors were insured under a comprehensive general liability policy which provided for a combined single limit of $500,000 for bodily

injury and property damage caused by an occurrence. There was also an umbrella policy issued by Mission Insurance Company (Mission) which provided full coverage of $10 million in excess of the Mission primary policy. Prior to the stipulated settlement, Mission became insolvent. Plaintiffs presented their claims on the stipulated judgment to CIGA which refused to pay. Plaintiffs filed this action for declaratory relief and violation of Insurance Code section 1063.2 subdivision (a)[1] against CIGA. The complaint alleged that CIGA failed to pay a claim duly presented to it for payment by plaintiffs pursuant to California law. CIGA answered the complaint and filed a motion for summary judgment on the grounds that it was not obligated to pay the claims because they were not "covered claims" within the meaning of section 1063.2 and within the meaning of the applicable insurance policy. The trial court granted the motion and entered judgment against plaintiffs. Plaintiffs filed a timely notice of appeal.

## III. FACTS

The undisputed facts as synthesized from the parties' separate statements indicate that in 1978, Slezinger, vice-president and manager of Heritage Bank, solicited plaintiffs to do business at the bank including transferring all of their banking business to the bank. For approximately three years, the parties had an amicable banking relationship. The bank granted the individual and corporate plaintiffs substantial unsecured business loans and lines of credit with flexible and favorable terms which rolled over continuously pursuant to agreement. The good banking relationship ended abruptly in November of 1981 when the Federal Deposit Insurance Corporation (FDIC) began an examination and audit of the bank. At that time, Slezinger advised plaintiffs that the bank wanted to get security for the existing unsecured loans because of the "heavy" examination by the FDIC. The bank requested that plaintiffs sign over trust deeds on their residences to secure the previously unsecured loans. Plaintiffs refused to comply.

On November 10, 1981, the bank again requested that plaintiffs give security for the unsecured loans. When they refused to comply with the requests, Slezinger threatened the plaintiffs by telling them that he was going to "kill" them, "ruin" them and drive them into bankruptcy. The following day, the bank sent 10 to 12 people in moving vans to the Heritage Home Loan office. The men blocked the doorway and informed plaintiffs that they were there to take all the furniture and fixtures from the business. One of the bank's employees pushed one of plaintiffs' employees.

---

[1] All further statutory references are to the Insurance Code unless otherwise indicated.

The bank also began to dishonor Heritage Home Loans' checks. The bank refused to disclose to plaintiffs the reasons why the checks were not honored. The bank falsely advised plaintiffs that the "computers were down" and that they could not have the balances on their accounts. On November 12, 1981, plaintiff Janmarie Walters attempted to make a normal cash withdrawal from the bank and was told by an employee at the bank that all her accounts were closed. She was also told that money in all of plaintiffs' accounts, including one of plaintiffs' minor daughter's trust account, had been "closed out." On November 13, 1981, the bank summoned plaintiffs to the bank. Plaintiffs were forced to sign a large number of documents including trust deeds on their residences. The bank and its employees' actions including the coercive nature of their conduct on November 13, 1981, provided the basis for the stipulated judgment that is at issue in this appeal.

## IV. DISCUSSION

### A. *Standard of Review*

A motion for summary judgment will be granted if the moving papers establish that there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) ■ Since summary judgment is a drastic measure, it will not be granted absent a clear showing that there is no triable issue of fact. (*Safeco Ins. Co.* v. *Gibson* (1989) 211 Cal.App.3d 176, 179-180 [259 Cal.Rptr. 206].) Our Supreme Court has held: "The purpose of summary judgment is to penetrate evasive language and adept pleading and to ascertain, by means of affidavits, the presence or absence of triable issues of fact." (*Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46].) In order to obtain summary judgment, a defendant's "declarations and evidence must either establish a complete defense to plaintiff's action or demonstrate the absence of an essential element of plaintiff's case." (*Gray* v. *America West Airlines, Inc.* (1989) 209 Cal.App.3d 76, 81 [256 Cal.Rptr. 877].) ■ An appellate court determines de novo whether there was a genuine issue of material fact and whether the moving party was entitled to judgment as a matter of law. (*Scroggs* v. *Coast Community College Dist.* (1987) 193 Cal.App.3d 1399, 1401 [239 Cal.Rptr. 916].) In this case, since there are no triable issues of material fact, the trial court properly granted the summary judgment.

### B. *CIGA is not bound by the stipulated judgment*

■ The basis of the declaratory relief action against CIGA is a stipulated judgment which provides for a $1.8 million settlement[2] in favor of plaintiffs. CIGA contends that a claim in which a stipulated judgment has been entered does not constitute a "covered claim" pursuant to former section 1063.2 subdivision (f).[3] Plaintiffs, on the other hand, argue that the section does not bar the claim since it would be unjust to allow CIGA to refuse to pay the claim. For the reasons stated below, we conclude that the express language of section 1063.2 subdivision (f) prohibits enforcement of a stipulated judgment against CIGA.

■ CIGA, which was created by legislation in 1969 (§ 1063 et seq.), is an involuntary, unincorporated, association of insurers transacting business in California. (§ 1063, subd. (a); *Isaacson* v. *California Ins. Guarantee Assn.* (1988) 44 Cal.3d 775, 784 [244 Cal.Rptr. 655, 750 P.2d 297].) CIGA has a statutory duty to provide for each member insolvency insurance to pay some (but not all) claims arising out of an insurance policy of an insolvent insurer. (§§ 119.5, 1063 et seq.; *Reed* v. *California Ins. Guarantee Assn.* (1988) 200 Cal.App.3d 1269, 1274 [246 Cal.Rptr. 561].) CIGA's authority is limited by section 1063.2, subdivision (a) which authorizes CIGA to only "pay and discharge covered claims." "It is only '*in connection therewith*' that CIGA is to 'pay for or furnish loss adjustment services and defenses of claimants *when required* by policy provisions . . . . [Citation.] In addition, CIGA 'shall be a party in interest in all proceedings involving a covered claim, and shall have the same rights as the insolvent insurer would have had if not in liquidation . . . .' [Citation.] It is unequivocally clear the scope of CIGA's rights and duties turns on the definition of 'covered claim.'" (*Saylin* v. *California Ins. Guarantee Assn.* (1986) 179 Cal.App.3d 256, 262 [224 Cal.Rptr. 493], italics omitted.)

Covered claims are defined by statute and provide in part that they are: "the obligations of an insolvent insurer, including the obligation for unearned premiums, (i) imposed by law and arising out of an insurance policy of the insolvent insurer; (ii) which were unpaid by the insolvent insurer; (iii) which are presented as a claim to the liquidator in this state or to the association . . . ." (§ 1063.1, subd. (c)(1).) It has been held that "covered

---

[2] The $1.8 million figure exceeds the maximum amount of settlement that CIGA may make. Section 1063.1, subdivision (c)(6) provides: " 'Covered claims' shall not include that portion of any claim, other than a claim for workers' compensation benefits, which is in excess of five hundred thousand dollars ($500,000)."

[3] Sections 1063.1 and 1063.2 were amended in 1987 to apply to events that occurred on or after January 1, 1988. Section 1063.1 was amended again in 1989. Section 1063.2, subdivision (f) is now subdivision (h). No substantive changes were made to the statute concerning the stipulated judgment. Citations in this opinion are to the prior statutory language.

claims" within the meaning of this statute are not co-extensive with the insolvent insurer's obligations under its policies. (*Saylin* v. *California Ins. Guarantee Assn.*, *supra*, 179 Cal.App.3d at p. 262.) "CIGA cannot and does not ' "stand in the shoes" of the insolvent insurer for all purposes.' [Citation.] Indeed, CIGA is 'expressly forbidden' to do so except where the claim at issue is a 'covered claim.' [Citation.] It necessarily follows that CIGA's first duty is to determine whether a claim placed before it is a 'covered claim.' " (*Ibid.*)

■■■ At the time the stipulated judgment was entered, the definition of "covered claims" was also limited by section 1063.2, subdivision (f)[4] which provided: " 'Covered claims' shall not include any judgments against or obligations or liabilities of the insolvent insurer or the commissioner, as liquidator, or otherwise resulting from alleged or proven torts, nor shall any default judgment or stipulated judgment against the insolvent insurer, or against the insured of the insolvent insurer, be binding against the association." The purpose behind this statutory limitation on judgments that may be brought against CIGA is "to protect CIGA against collusion and to require simply that the validity of any claim be determined in an adversary setting before being reduced to a judgment which CIGA must honor." (*Biggs* v. *California Ins. Guarantee Assn.* (1981) 126 Cal.App.3d 641, 645 [179 Cal.Rptr. 16].)

The issue in this case, thus, turns upon whether plaintiffs may maintain a cause of action against CIGA based upon claims that have been reduced to a stipulated judgment notwithstanding express language to the contrary. In *Isaacson* v. *California Ins. Guarantee Assn.*, *supra*, 44 Cal.3d at page 792, the injured party and the insured entered into a settlement. The court held that, where judgment against the insured is likely and CIGA refuses to enter into a reasonable settlement, an insured may maintain a cause of action against CIGA for reimbursement. The court, however, specifically limited its discussion to circumstances where *the insured* brings an action against CIGA for reimbursement. (*Id.* at p. 790, fn. 10.) *Isaacson* did not address the issue in this case which is—can a third party make a claim against CIGA based upon a stipulated judgment?

In *Biggs* v. *California Ins. Guarantee Assn.*, *supra*, 126 Cal.App.3d at pages 645-647, the court considered issues similar to those in this case. In *Biggs*, the plaintiff obtained a default judgment against the insured, a corporation, whose powers had been suspended for failure to pay corporate franchise taxes under the Revenue and Taxation Code. Plaintiffs then sought to

---

[4] As noted previously, section 1063.2, subdivision (f) as it was in effect when the stipulated judgment was entered into has now been recodified as section 1063.2, subdivision (h).

enforce the default judgment against CIGA. The court concluded that the plaintiffs could not maintain the action. It held, "In the usual situation a plaintiff in a personal injury action has no direct cause of action against the defendant's liability insurer." (*Id.* at p. 645.) The court noted that section 11580 "requires that contracts of insurance contain a provision that an action may be brought directly against the insurer on a *judgment* obtained against the insured . . . [in order] to protect injured parties against the insolvency of the *insured.*" (*Ibid.*, original italics.) However, there is no similar statutory requirement for CIGA. "The role of CIGA differs from that of the ordinary insurer. It was created to provide relief in the case of an *insurance carrier* becoming insolvent [citation] and in so doing is given certain powers and certain protections." (*Ibid.*) One of the protections given to CIGA is a statutory prohibition against enforcing default (*Id.* at p. 647) and stipulated judgments against it. (§ 1063.2, subd. (f); *Reed* v. *California Ins. Guarantee Assn., supra,* 200 Cal.App.3d at pp. 1275-1277.) In *Reed,* an insurer became insolvent after the insured's default was entered in the underlying action. Plaintiffs reduced the causes of action to a stipulated judgment. At the time the default was entered, former section 1063.2, subdivision (f) did not include the language barring stipulated judgments but it precluded default judgments. The court held that plaintiffs were barred from recovering on the judgment against CIGA since the stipulated judgment was the functional equivalent of a default judgment which was specifically precluded under section 1063.2. (*Id.* at p. 1277.) In this case, when the stipulated judgment was entered into the statute specifically provided that a "covered claim" did not include a stipulated judgment. Therefore, plaintiffs, having reduced their causes of action against the insurers to such a judgment, may not maintain this action against CIGA.

Finally, plaintiffs argue that CIGA is estopped from asserting the statutory prohibition against stipulated judgments because CIGA's counsel was present at the time the judgment was agreed to by the parties in the underlying Orange County Superior Court action. Plaintiffs make this assertion without providing any factual or legal basis for an estoppel against CIGA. Furthermore, the estoppel issue was not raised in the trial court and was raised for the first time in the reply brief. Accordingly, it will not be considered in this appeal. (*Smith* v. *Board of Medical Quality Assurance* (1988) 202 Cal.App.3d 316, 329, fn. 5 [248 Cal.Rptr. 704].)

C., D.*

. . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante,* page 1187.

## V. CONCLUSION

The judgment is affirmed. CIGA is to recover its costs on appeal jointly and severally from plaintiffs.

Boren, J., and Grignon, J., concurred.