[No. B055272. Second Dist., Div. Seven. Sept. 24, 1992.]

LYNN KORTMEYER, Plaintiff and Appellant, v.
CALIFORNIA INSURANCE GUARANTEE ASSOCIATION, Defendant
and Respondent.

**COUNSEL**

Ralph N. George for Plaintiff and Appellant.

Clausen & Campbell, Marie D. Clause and Stanley T. Gilliam for Defendant and Respondent.

OPINION

WOODS (Fred), J.—

## I.

## INTRODUCTION

This appeal is from a judgment of dismissal favoring defendants filed October 22, 1990, following a hearing on an order to show cause for order that claim be paid filed by appellant and plaintiff, Lynn Kortmeyer (Kortmeyer). The order to show cause was ultimately heard by the trial court on September 7, 1990. The court denied the order to show cause. The case was dismissed. We affirm.

## II.

## STATEMENT OF FACTS

Kortmeyer filed a complaint for declaratory relief on April 18, 1990, against the Insurance Commissioner[1] as liquidator of Coastal Insurance Company (Coastal) and California Insurance Guarantee Association (CIGA) seeking an order allowing Kortmeyer's claim and adjudging her entitlement to be paid by CIGA for injuries received in an accident with an uninsured motorist on October 26, 1988. Kortmeyer alleged coverage under an automobile insurance policy with Coastal effective for the period June 2, 1988, to June 1, 1989. Following her notification to her insurer of the accident, Kortmeyer received a notice of the liquidation of Coastal and filed a proof of claim in the liquidation proceedings on or about May 3, 1989.

Kortmeyer has "stipulated" that "no lawsuit was filed against the 'hit-and-run' driver" and that "no demand for arbitration had been made against Coastal Insurance Company." No agreement as to an amount due under the policy was ever reached. The claim was formally denied June 5, 1990, for failure to comply with Insurance Code section[2] 11580.2, subdivision (i).

## III.

## ISSUES

■ The ultimate issue presented by this case is whether the insolvency of the insured's auto insurance carrier abrogates the insured's duty to

---

[1]The Insurance Commissioner did not appear in the lawsuit and probably was never served. Parenthetically, Insurance Code section 1020 provides that upon issuance of an order for liquidation of the insurer, the court "shall issue" an order staying the prosecution of actions against the insolvent. This order has not been made a part of this record.

[2]Unless otherwise noted, all statutory references are to the Insurance Code.

preserve her cause of action against the uninsured motorist as required by section 11580.2, subdivision (i).

A preliminary issue is whether section 1032 permits bringing an order to show cause for the allowance of a claim against the CIGA.

## IV.

### DISCUSSION

A. *The Definition of "Covered Claims" in This Case Required Kortmeyer to Preserve Her Uninsured Motorist Claim.*

CIGA is a statutorily created unincorporated association whose obligation it is to pay and discharge "covered claims" as defined by statute. (*Saylin* v. *California Ins. Guarantee Assn.* (1986) 179 Cal.App.3d 256, 261-262 [224 Cal.Rptr. 493].) "It is unequivocally clear the scope of CIGA's rights and duties turns on the definition of 'covered claim.' " (*Ibid.*)

" 'Covered claims' " are defined, in part, as "the obligations of an insolvent insurer, including the obligation for unearned premiums, (i) imposed by law and within the coverage of an insurance policy of the insolvent insurer; (ii) which were unpaid by the insolvent insurer; (iii) which are presented as a claim to the liquidator in this state or to the association on or before the last date fixed for the filing of claims in the domiciliary liquidating proceedings; (iv) which were incurred prior to, on, or within 30 days after the date the liquidator was appointed; . . ." (Ins. Code, § 1063.1, subd. (c)(1).)[3]

The focus of this case is on that portion of the definition set forth above which provides that the claim be one "imposed by law and within the coverage of an insurance policy of the insolvent insurer." Since section 11580.2 is incorporated into every auto policy by law (*In re Marriage of Jackson* (1989) 212 Cal.App.3d 479, 484 [260 Cal.Rptr. 508]), this uninsured motorist claim is only "within the coverage" of the policy if the insured has complied with section 11580.2, subdivision (i).

The definition of "covered claims" works in conjunction with the rights, duties and liabilities of CIGA set forth at section 1063.2, subdivision (b): "The association . . . shall have the same rights as the insolvent insurer would have had if not in liquidation, *including, but not limited to,* the right to: (1) appear, defend, and appeal a claim in a court of competent jurisdiction;

---

[3]This version is applicable to the date of loss involved in this case. Subsequent changes are not reflected and do not change the result of this case.

(2) receive notice of, investigate, adjust, compromise, settle, and pay a covered claim; and (3) investigate, handle, and deny a noncovered claim." (Italics added.)

Among those rights which Coastal, the insolvent carrier, would have had but for the intervening insolvency is the right to demand the insured's compliance with section 11580.2, subdivision (i). CIGA, pursuant to statute, may exercise that right. Indeed, since pursuant to section 1063.2, subdivision (a), CIGA shall "pay and discharge covered claims" only, it *must* exercise the insolvent's right to demand compliance with section 11580.2, subdivision (i).

## B. *Timely Suit, Agreement, or Arbitration Are Absolute Conditions Precedent to Enforcement of Uninsured Motorist Coverage.*

Section 11580.2 has been an enduring part of California law for many, many years. Numerous decisions have interpreted its provisions. Kortmeyer's argument is that the statute is made nugatory by reason of the insolvency of the insured's carrier.

The statutory scheme creating the uninsured motorist coverage provides the mechanism by which the insured's insurer may recover losses paid under this coverage. Section 11580.2, subdivision (g) provides, in pertinent part, that: "The insurer paying a claim under an uninsured motorist endorsement or coverage shall[4] be entitled to be subrogated to the rights of the insured to whom the claim was paid against any person legally liable for the injury or death to the extent that payment was made."

The rationale behind the existence of 11580.2, subdivision (i) is that the insurer is able to recoup the losses expended in uninsured motorist claims by suing the tortfeasor, but this recovery is only possible where the insured has preserved that right by complying with 11580.2, subdivision (i).

Section 11580.2, subdivision (i) provides that: "No cause of action shall accrue to the insured under any policy or endorsement provision issued pursuant to this section unless one of the following actions have been taken within one year from the date of the accident: [¶] (1) Suit for bodily injury has been filed against the uninsured motorist, in a court of competent jurisdiction. [¶] (2) Agreement as to the amount due under the policy has been concluded. [¶] (3) The insured has formally instituted arbitration proceedings."

The courts have followed this statutory mandate. In *Pacific Indem. Co.* v. *Ornellas* (1969) 269 Cal.App.2d 875, 877 [75 Cal.Rptr. 608], the court held

---

[4]As used in the Insurance Code, the word "shall" is mandatory. (§ 16.)

that the one-year period for the filing of suit against the uninsured motorist was not tolled by Code of Civil Procedure section 351 where the uninsured motorist was absent from the state. In that case, suit was filed against the uninsured motorist one year and five days following the accident; an arbitration proceeding was commenced against the uninsured motorist about a year and a half following the accident. In denying the relief sought by plaintiff, the court stated that "the Insurance Code subsection defines timely suit, agreement or arbitration as absolute conditions precedent to enforcement of uninsured motorist coverage." (*Id.*, at p. 877.)

Similarly, the court in *Pacific Indemn. Co.* v. *Superior Court* (1966) 246 Cal.App.2d 63, 72 [54 Cal.Rptr. 470], found no exception permitting a minor to pursue arbitration beyond the one year statutory period and stated: "As we read the pertinent statute[5] before us, it imposes a condition precedent effective against all persons claiming its benefits; it makes no mention of minors nor does it establish any exception on their behalf."

The one-year limitation provision of section 11580.2, subdivision (i) "creates a condition for the preservation of a potential cause of action under an insurance policy and does not fix the time for instituting a civil suit against the insurer after a cause of action has accrued." (*Williams* v. *Los Angeles Metropolitan Transit Authority* (1968) 68 Cal.2d 599, 605 [68 Cal.Rptr. 297 [440 P.2d 497].) In other words, this provision is not one which tolls a statute of limitations but is a condition precedent to accrual of a cause of action.[6]

In *Firemen's Ins. Co.* v. *Diskin* (1967) 255 Cal.App.2d 502 [63 Cal.Rptr. 177], the court held that the insured must comply with section 11580.2, subdivision (i) in order to acquire a claim against his own insurer. In so holding, the court noted that the liability of the insurer is "contingent on the insured's right to legal recovery against the tortfeasor." (*Id.*, at p. 506.)

In *Diskin*, the defendants, who were California residents, were involved in an automobile accident in Florida. Florida had a four-year statute of limitations for personal injuries. More than a year after the accident, the tortfeasor's insurer became insolvent, giving rise to a possible uninsured motorist claim by the California residents against their own insurer. The court determined that even though the insureds did not have an actionable claim against their own insurer until more than one year after the accident, they had to

---

[5]At the time, section 11580.2, subdivision (h). However, a 1969 amendment redesignated former subdivision (h) as subdivision (i). (See Amendments, Deering's Ann. Ins. Code (1977 ed.) § 11580.2, p. 116.)

[6]Section 11580.2, subdivision (k), which may toll the requirements of subdivision (i), was not applicable here since Kortmeyer was represented by an attorney when she filed her claim.

perform one of the three acts required by then section 11580.2, subdivision (h) before the insolvency of the tortfeasor's insurer had occurred.

The court reasoned that: "Clearly, the statute is an adjunct to the right to recover damages for personal injuries, actions for which must normally be filed in California within one year of the date of the accident. (Code Civ. Proc., § 340.) Were we to extend beyond one year the financial responsibility of a person who may be derivatively liable for the fault of another we would create a supplemental liability of greater duration than the original liability, thereby holding the person secondarily responsible to a longer period of accountability than the person primarily responsible. If we applied appellants' argument to a California accident involving a motorist subsequently determined to be uninsured, we would be allowing the insured to institute a claim at a time when suit against the original tortfeasor was barred, a procedure which would nullify the insurer's right of subrogation against the tortfeasor. . . . We think . . . the Legislature intended to assimilate and attach the uninsured motorist liability of the insurer to the original tort liability of the motorist tortfeasor as closely as possible." (255 Cal.App.2d at p. 509.)

The insurance carrier is entitled to a cause of action against the uninsured motorist. If the insured has not protected the statutory time, the insurance carrier—or, in this case, CIGA—has no obligation to pay its insured.

C. *The "Fixing" of Appellant's Rights Under Section 1019 Does Not Abrogate Her Duty to Comply With the Provisions of Section 11580.2, Subdivision (i).*

██ Kortmeyer contends that since she had rights on the date of the order of insolvency, March 6, 1989, her rights are fixed pursuant to section 1019 which provides that: "Upon the issuance of an order of liquidation . . . the rights and liabilities of . . . policyholders . . . shall . . . be fixed as of the date of the entry of the order . . . ." Kortmeyer argues that this provision abrogates the requirement that she comply with section 11580.2, subdivision (i). This contention is not accompanied by any authority and, indeed, the authority is to the contrary.

Absent Kortmeyer's compliance with section 11580.2, subdivision (i), she had no rights against either insolvent Coastal or CIGA to be "fixed." As discussed, the insured's cause of action against her insurer (or, in this case, against CIGA) only accrues when the insured has preserved the cause of action against the uninsured motorist tortfeasor. Kortmeyer failed to do that.

D. *An Order to Show Cause Proceeding Under Section 1032 Is Not an Appropriate Vehicle for Determining Whether a Claim Constitutes a Covered Claim.*

 Section 1032 provides, in pertinent part, that: "Within thirty days after the mailing of the notice [of rejection of claim] the claimant may apply *to the court in which the liquidation proceeding is pending* for an order to show cause why the claim should not be allowed." (Italics added.) In this case, Kortmeyer has attempted to use this order to show cause procedure, intended to secure a judicial determination that the claim be permitted to be filed where the liquidator has rejected it for filing, to secure a determination that the claim constitutes a "covered claim" for which CIGA is liable.

The determination that the claim is a "covered claim" is not determined in a "show cause" proceeding. CIGA is entitled to, indeed, *"shall have* the same rights as the insolvent insurer would have had if not in liquidation . . . ." (Italics added.) (§ 1063.2, subd. (b).) Among these is the right to "appear, defend, and appeal a claim in a court of competent jurisdiction." (§ 1063.2, subd. (b).) CIGA is entitled to a declaration of its rights, duties and liabilities under the statutory scheme. (See, *California Ins. Guarantee Assn.* v. *Liemsakul* (1987) 193 Cal.App.3d 433 [238 Cal.Rptr. 346]; *Saylin* v. *California Ins. Guarantee Assn., supra,* 179 Cal.App.3d 256; *Reed* v. *California Ins. Guarantee Assn.* (1988) 200 Cal.App.3d 1269 [246 Cal.Rptr. 561].) A declaration of rights cannot be accomplished by an order to show cause proceeding, nor is there specific statutory authority to initiate such a hearing in a court other than the one in which the liquidation is pending.

E. *The Court and Parties Properly Treated the Order to Show Cause as a Motion for Judgment on the Pleadings.*

Although this case arises in the context of a hearing denominated as an "order to show cause" pursuant to section 1032, the court and the parties treated the hearing as a motion for judgment on the pleadings. Although there is no express California authority for such a motion, it remains a well-established procedure for testing the sufficiency of a pleading, having the purpose and effect of a general demurrer. (*Sofias* v. *Bank of America* (1985) 172 Cal.App.3d 583, 586 [218 Cal.Rptr. 388].) A motion for judgment on the pleadings can be made orally. (*Lortz* v. *Connell* (1969) 273 Cal.App.2d 286 [78 Cal.Rptr. 6].) The court can grant the motion for judgment where the cause of action asserted is rebutted by matter established by judicial notice. (*Kachig* v. *Boothe* (1971) 22 Cal.App.3d 626, 630 [99 Cal.Rptr. 393].)

 The complaint must set forth sufficient facts to bring the claim within the statutory definition of an uninsured motorist claim. (*Page* v.

*Insurance Co. of North America* (1967) 256 Cal.App.2d 374 [64 Cal.Rptr. 89].) *Page* involved a three-vehicle accident in which plaintiff had failed to allege any physical contact with a vehicle described in the pleadings as a "phantom vehicle." Defendant INA had demurred to this count of the complaint. An appeal followed the judgment of dismissal. In affirming that no uninsured motorist cause of action survived, the court determined that plaintiff's characterization of the claim was a mere conclusion of law. (*Id.*, at p. 378.)

In this case, Kortmeyer failed to plead compliance with section 11580.2, subdivision (i) and the face of the complaint reveals that no action was taken between the date of the accident on October 26, 1988, and the filing of the instant law suit on April 18, 1990, more than one year later. In addition, Kortmeyer has stipulated that there has been no compliance with 11580.2, subdivision (i).

## V.

### DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to respondent.

Lillie, P. J., concurred.

**JOHNSON, J.**—Although I concur in the judgment, I would base it on narrower grounds. Furthermore, I believe this case demonstrates how Insurance Code section 11580.2, subdivision (i) continues to operate as a trap for the unwary and a windfall for insurance companies. As I will explain below, this section is unnecessary to protect the subrogation rights of insurers and should be repealed.

I am not as certain as my colleagues that Ms. Kortmeyer's claim under her insurance policy is not a "covered claim" within the meaning of Insurance Code section 1063.1. That section defines a "covered claim," in relevant part, as one "imposed by law and within the coverage of an insurance policy of the insolvent insurer." CIGA does not deny Ms. Kortmeyer had a valid contract with her insurer; the contract provided uninsured motorist coverage; and Ms. Kortmeyer suffered personal injuries when her car was struck in the rear by a "hit and run" driver. Thus it would seem Ms. Kortmeyer's claim was "within the coverage of an insurance policy of the insolvent insurer." The majority reasons because Insurance Code section 11580.2 is incorporated by law into every auto policy an uninsured motorist claim is only "within the coverage" of the policy if the insured has complied with section

11580.2, subdivision (i). But section 11580.2, subdivision (i) does not speak in terms of coverage; it states *"no cause of action* shall accrue to the insured" under the policy unless the insured takes one of the specified actions within a year from the date of the accident. It seems to me a claim is either covered or not covered, i.e., it either comes within the definition of a risk insured against or it does not, and that is a very different question from whether the insured has a cause of action if the insurer breaches its duty to indemnify the insured for a covered risk. I recognize there is dicta in a few cases suggesting the insured's uninsured motorist coverage lapses if the insured does not comply with the provisions of section 11580.2, subdivision (i). (See, e.g., *West American Ins. Co.* v. *Chalk* (1989) 213 Cal.App.3d 825, 828, 831 [261 Cal.Rptr. 837]; *Firemen's Ins. Co.* v. *Diskin* (1967) 255 Cal.App.2d 502, 512 [63 Cal.Rptr. 177].) However, none of these cases, nor the majority's opinion in this case, explains why this should be so.

But even assuming Ms. Kortmeyer has a "covered claim," I agree with the majority her action was properly dismissed under Insurance Code section 11580.2, subdivision (i) because under Insurance Code section 1063.2, subdivision (b) CIGA "shall have the same rights as the insolvent insurer would have had if not in liquidation, including, but not limited to, the right to: (1) . . . defend . . . a claim in a court of competent jurisdiction . . . ." Because Coastal could have raised the bar of section 11580.2 in a suit by Ms. Kortmeyer, CIGA may raise that bar.

By enacting the CIGA legislation and mandating uninsured motorist protection the Legislature sought to protect the public from insolvent insurers and from uninsured motorists. Indeed, if there was ever an insured who deserved this protection it is Ms. Kortmeyer, who was injured by an uninsured motorist *and* had her insurance company go bankrupt in the space of a few months. Yet under the trial court's ruling, which was clearly correct under the current state of the law, Ms. Kortmeyer was denied this protection.

It is time for the Legislature to take another look at Insurance Code section 11580.2, subdivision (i). While it is true this section was originally intended to protect the insurer's subrogation rights under section 11580.2, subdivision (g), that protection is no longer necessary, if it ever was, in light of subsequent amendments to subdivision (g).

When Insurance Code section 11580.2 was originally enacted, "[t]he Legislature doubtless had in mind that delay in asserting an uninsured motorist claim can seriously prejudice the insurer. For example, the insurer's subrogation right to go against the negligent third party . . . will be lost unless something is done within one year after the accident." (*Aetna Cas. &*

*Surety Co.* v. *Superior Court* (1965) 233 Cal.App.2d 333, 340 [43 Cal.Rptr. 476].) Subsequently, however, the Legislature amended the subrogation provision of section 11580.2 to specifically allow the insurer to bring an action against the uninsured motorist "within three years from the date that payment was made hereunder." (§ 11580.2, subd. (g).) This special statute of limitations takes precedence over the general one-year statute of limitations for personal injuries. (Code Civ. Proc., § 340, subd. (3); *West American Ins. Co.* v. *Chalk, supra,* 213 Cal.App.3d at p. 829), and conforms to the three-year statute of limitations for property damage. (Code Civ. Proc., § 338, subd. (c).) Furthermore, the three-year limitations period runs from the date "that payment was made" on the uninsured motorist claim, not from the date of the injury. Therefore the insured's failure to settle, arbitrate or sue the uninsured motorist within one year in no way prejudices the insurer's subrogation rights.

Furthermore, as one commentator predicted when Insurance Code section 11580.2 was enacted, a requirement such as section 11580.2, subdivision (i) could be used as a sword by insurance companies against their own insureds rather than as a shield against the loss of their subrogation rights. (Comment, *Uninsured Motorist Insurance: California's Latest Answer to the Problem of the Financially Irresponsible Motorist* (1960) 48 Cal.L.Rev. 516, 531.) "Since often the insured will not think it necessary to bring an action against the uninsured motorist because of the existence of uninsured motorist coverage, it would not be fair to allow an insurer to take refuge in the [one-year] statute of limitations after the insured has been lulled into a false sense of security by reason of the coverage itself." Case law confirms this prediction. (See, e.g., cases collected in *Branham* v. *State Farm Mut. Auto. Ins. Co.* (1975) 48 Cal.App.3d 27, 30 [121 Cal.Rptr. 304].) In 1969, the Legislature added subdivision (k) to section 11580.2, requiring an insurance company to notify an insured who has made an uninsured motorist claim of the provisions of subdivision (i) at least 30 days before the expiration of the one-year time limit. Failure to give that notice tolls the time period in section 11580.2, subdivision (i) until 30 days after notice is given. This provision does not apply to insureds such as Ms. Kortmeyer who are represented by counsel, apparently on the theory attorneys would know enough to comply with the provisions of section 11580.2, subdivision (i). As this case demonstrates, that theory was mistaken. The requirements of subdivision (i) now serve principally as a sword cutting off the rights of an insured to the uninsured motorist protection she paid for.

One court has suggested the purpose of Insurance Code section 11580.2, subdivision (i) is to even-out the financial responsibility of the insurer and the uninsured motorist. Otherwise, the court stated, the uninsured motorist

would escape liability if the insured did not file suit within one year from the date of the accident (Code Civ. Proc., § 340, subd. (3), while the insurer, who is only derivatively liable, could be sued under the policy within four years. (Code Civ. Proc., § 337.) (*State Farm Mut. Auto. Ins. Co.* v. *Patton* (1987) 194 Cal.App.3d 626, 631 [239 Cal.Rptr. 750].) The court failed to note the provision of section 11580.2, subdivision (g), discussed *ante*, which allows the insurer to sue the uninsured motorist within three years from the date it pays its insured under her uninsured motorist coverage. Under that provision the uninsured motorist cannot escape liability merely because the insured did not file suit within one year from the date of the accident.

The first maxim of California jurisprudence is that "When the reason for a rule ceases, so should the rule itself." (Civ. Code, § 3510.) Insurance Code section 11580.2, subdivision (i) has long outlived its usefulness and should be repealed.